F. NORCUM v. SAMUEL LUM, ADMR., &c.

33 299
78 932
78 933

1. INTEREST: USURY.—An agreement, regulating the rate of interest to be charged in future dealings between the parties, will not apply to contracts entered into after the passage of a law making the rate so agreed on, usurious. And if thereafter a higher rate than is allowed by law at the time the contract is made, be charged, the previous agreement will not save it from the taint of usury.

2. EXECUTOR AND ADMINISTRATOR: INSOLVENT ESTATE: INTEREST OF ADMINISTRATOR IN LAND.—The declaration of insolvency, vests a sufficient title in the administrator to the realty of the intestate, to enable him to maintain a bill in equity to remove incumbrances therefrom.

3. SAME: HOW AFFECTED BY USURY.—A person who borrows from an administrator the money of his intestate, at a usurious rate of interest, is entitled to make the same defence in all respects, as if the money belonged to the administrator, in his individual capacity.

4. INTEREST: USURY: RULE IN EQUITY IN RELATION TO.—Where a debtor comes into a court of equity for an injunction against the sale of property, conveyed by him to secure a usurious debt, he is entitled, if the usury be established, to be relieved of all the interest, both usurious and legal, to the same extent as if he had been sued at law and made his defence there. See *Parkman* v. *McKinney*, 12 S. & M. 631.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

The administrators of one E. C. Mielke filed their bill in the Superior Court of Chancery, against F. Norcum and the trustees in a certain deed of trust made by Mielke, to secure a debt to Norcum, for the purpose of restraining said trustees, from selling the property conveyed in the deed; and also for the purpose of impeaching the consideration of the notes secured by the deed of trust, upon the ground of usury.

The substance of the case, as it appears from the pleadings and evidence, is, that in November, 1841, the said Mielke, who was then a broker in the city of Vicksburg, and the defendant F. Norcum, entered into a written agreement, by which it was stipulated that for the loan of the money, which might thereafter be deposited by Norcum with Mielke, the latter should pay interest, at the rate of ten per centum per annum; and that on all sums paid out by Mielke on the

checks of Norcum, a like rate of interest should be paid by Norcum to Mielke.   That under this agreement various sums of money had been deposited by Norcum, from time to time, from the date of said agreement, until May, 1845; and also, within the same time, payments had been made by Mielke, on the checks of Norcum. And that during this time, interest accounts were, on several occasions, made out, showing a balance of interest in favor of Norcum, which balances were passed to his credit as cash.   That in May, 1845, a final settlement was had between Norcum and Mielke, in which interest at the rate of ten per centum per annum was charged on both sides, as well upon the deposits and checks which had been made and paid, after the 17th day of April, 1842, when the rate of interest was changed by act of the legislature, as upon the deposits and payments made before that time.   On this final settlement, over $6000 was found to be due from Mielke to Norcum, for which the former gave the latter his three certificates of deposit, payable at different dates, and bearing interest at eight per centum per annum.   Afterwards, Mielke gave Norcum his two promissory notes for the amount of the certificates of deposit. These notes were made payable to F. Norcum, administrator of —— McNeill, and were secured by the deed of trust before alluded to, which was executed by Mielke, at the date of the notes.   The property conveyed in the deed of trust consisted of real estate, situated in the city of Vicksburg.

Afterwards, Mielke and the complainants were appointed his administrators, and they, in the course of their administration, and before the filing of the bill, procured an order from the Probate Court, declaring the estate of Mielke insolvent.

Upon the final hearing, the chancellor ordered an account to be taken upon the following principles: that interest, at the rate of ten per centum per annum, should be allowed on all items, on both sides, from the date of each item up to the 17th day of April, 1842, and that a balance should be struck at that date.   And if it be in favor of Norcum, interest at the rate of ten per centum per annum should be allowed thereon to the date of the report.   That no interest should be allowed on any item on either side, after the 17th day of April, 1842, but that the items of debit and credit subsequent to the date should be computed, and a balance struck,

showing the whole amount due said Norcum, at the date of the report.

Upon the coming in of the report of the commissioner, the account stated, in conformity to the decree, showed a balance due Norcum of $1702 79. The injunction, which had theretofore been obtained, was dissolved, as to that amount, and made perpetual as to the balance of the notes. Leave was also given the trustees to sell the property, for the payment of the sum found due by the commissioner, unless the same were paid in ten days by the complainants.

From this decree Norcum appealed.

*F. Anderson* and *George L. Potter*, for appellants, made the following points:

1. The contract was not usurious. At the time it was made it was legal and valid, and it is expressly excepted out of the operation of the Interest Act of 1842, by the 5th section of that Act, which declares, " that the provisions of this Act shall not affect any contract entered into previous to its passage." See Hutch. Dig. 643. In the renewal of the old debt, by the certificates of deposits, in May, 1845, and subsequently by the notes, though made after the Act of 1842 went into operation, the parties might legally contract for the same rate of interest which the old bore. See *Dennistown* v. *Potts*, 4 Cushm. 33.

2. The administrators cannot maintain this bill, to protect the realty of the heir. The declaration of insolvency, without an order of sale, confers no title to the realty, on the administrator. Until such order is made, the administrator has no such interest in the land, as will authorize him to file a bill to remove incumbrances on it. *Williams* v. *Stratton*, 10 S. & M. 418; *Turner* v. *Ellis*, 24 Miss. R. 173; *Campbell* v. *Brown*, 6 How. Miss. 106; *Gwinn* v. *McCarroll*, 1 S. & M. 351; *Planters' Bank* v. *Johnston*, 7 Ib. 449.

3. At all events, the complainants should have been charged with the principal and legal interest.

The decree required the account to be taken without any interest, after the 17th of April, 1842. In this, we think there was error. It was certainly an established principle prior to the decision of *Parkman* v. *McKinney*, 12 S. & M. 631, that, where a party went

into chancery to be relieved of a usurious contract, he was bound to pay the principal and legal interest.   *McRaven* v. *Forbes*, 6 How. Miss. 575.

In the case of *Parkman* v. *McKinney*, however, it was held, that where the contract was on a deed of trust, and the debtor was compelled to resort to equity for relief, he might do so upon the payment of the principal alone..  One of the reasons given by the court for its decision, arose out of the difference between the provisions of the common law and our statute, in regard to usury.   The former made a usurious contract void, but our statute only avoided it as to the interest, and therefore, in the opinion of. the court, it inflicts no punishment on the lender.  This reasoning, we submit, is wholly unsatisfactory, so far as it goes to establish the principle, that, in any case, à party going into chancery, to avoid a usurious contract, is only bound to pay the principal.   We are not controverting the authority of the case on the main point, that where the contract is in the shape of a deed of trust, and a court of equity alone has jurisdiction to give relief, the party is only bound to tender the principal, but we insist that the authority shall be carried no further, and that only in the case supposed (and which existed in that case), the exception to the general doctrine shall prevail.  To carry the exception further, and say, that in every case, where a party resorts to chancery, whether compelled to do so or not, he shall only be required to pay the principal debt, is to make the case of *Parkman* v. *McKinney* directly in opposition to the case of *McRaven* v. *Forbes*, and to long and well-established principles.

We have said this much, because the reason we have last alluded to as given by the court in *Parkman* v. *McKinney*, would seem to infer that in every case, the exception there established would prevail ; but as that is only a part of the reasoning of the court and not of the decision, we submit that it is unsound, and that any principle established on it would be fallacious.

The answer to it is plain : the difference between the common law and our statute is not in character but degree.   The common law inflicts the loss of the whole debt ; our statute the loss of the whole interest which the party would be entitled to : thus both inflict a loss, and both attach a penalty.

Now what is the principle on which the rule was established in chancery ? a principle which Judge Sharkey did not controvert as correct in *Parkman* v. *McKinney*, but only sought to distinguish the facts of that case from those on which the principle was founded.

It was regarded as against conscience, that the borrower should pocket the money, without being compelled to return what was really due, as that would be to make the statute, which was intended to prevent fraud, an instrument of fraud. Now what is really due, is the principal and legal interest; for that the party would have been entitled to, but for the usury. 1 Story's Eq. §§ 301, 302.

A distinction is attempted to be made between the class of cases where the jurisdiction entertained by courts of equity for relief, is or is not discretional. We think no legitimate distinction exists; but if it does, then we say, if there is any class of cases where the relief granted is a matter of discretion, it is where a rescission or cancellation of contracts or instruments is sought. For these reasons we think the general doctrine established in the case of *McRaven* v. *Forbes* is not abandoned, except in the particular state of facts which existed in *Parkman* v. *McKinney*.

The application we make of the argument is this. The administrator has no interest in the lands, as we have shown above; but admit that upon a mere declaration of insolvency without an order of sale, he becomes invested with a power of sale, it is only of the equity of redemption, which he may sell for what it may bring, and that ends his connection with the lands. What other power has he over the lands? He certainly does not become vested with the title, except for a particular purpose, to convey it to the purchaser. Would he have the right to bring an action of ejectment for lands adversely possessed? We think not. The only provision of the statute is to be found in brackets, about the middle of page 668, Hutch. Code, ("the real estate being sold according to law.") From this we infer that he must obtain an order of sale, as provided for in Section 98, or if not that, he has nothing more than a power of sale. His right, therefore, to contest the usury is on the debt, and not on his title to the land. That defence he can make at law whenever called on to pay. If the estate is not insolvent, he can make it when sued on the debt. If it is insolvent, he can make it

before the auditors or commissioners appointed by the court. There is therefore no necessity for his coming into a court of chancery, and the case falls completely within the principle of the case of *McRaven* v. *Forbes*, 6 How. Miss. 575.

The case of *Parkman* v. *McKinney* arose upon a note (secured by deed of trust), which, in contravention of the proviso to the first section of the Act of 1822, "fraudulently and deceitfully expressed" on its face, that it was for money lent; and Judge Sharkey based his opinion partly on that proviso, which enacted, " that if such fraud or deception shall be discovered in any suit at law or equity, no interest or premium shall be allowed or recovered," &c.

That portion of the proviso relied on by Judge Sharkey, does not apply to this case, but the last branch of the proviso (supposing usury to be established, which we deny), does apply. It is, " that if it shall be ascertained, on the plea or answer of the defendant in any suit, that more than ten per cent. per annum be taken or received, no interest or premium whatever, shall be recovered."

This court has construed a precisely similar proviso to the first section of the Act of 1822, and has held that the defence can only be made by way of plea or defence, either at law or in equity. *McLaurin* v. *Parker*, 24 Miss. Rep. 511.

If, under the plain words of the statute and the decision in 24 Miss., this defence can be set up in an original bill in chancery, which is to say the least doubtful, still the distinction between this case and that of *Parkman* v. *McKinney* is manifest; for in that case, the statutory provision was, that in any suit or action at law or equity, if the usury was discovered, no interest should be allowed or received.

We say then in conclusion on this point, that if the administrator can come into a court of equity at all, in reference to the land, and if the defence of usury, under the proviso of the statute where applicable, can be made by a bill in equity; still it is clear from the above reasoning, that it was the duty of the party to tender the legal interest and principal, or at least of the court to allow it in the decree.

*Smedes* and *Marshall*, for appellees.

We think the bill and proof show conclusively that the transac-

tions between Norcum and Mielke were usurious. That usurious interest was charged and received by Norcum, counsel do not in fact attempt to deny ; nor do they pretend to say that such usurious charges do not form a part of the consideration of the notes now in controversy. The depositions of McLauren and Sale stamp the dealings of the parties as usurious beyond dispute. Defendants, however, attempt to escape the penalty of the law by changing the creditor, merely surrendering the certificates of deposit payable to F. Norcum, Esq., and taking notes in lieu of them payable to F. Norcum, administrator, &c. Surely such a defence as this cannot be made available in this court. What was the consideration of the notes ? Suppose we admit it to have been the certificates of deposit, what then, we ask, was the consideration for them ? McLauren shows it in detail, giving each item. It was made up of money, interest, and land ; it was the balance due by Mielke to Norcum on their final settlement. Into that balance entered unquestionably the price of the town lot bought by Mielke of Norcum, and the usurious interest charged on it for the time given, and the money and excessive interest charged on it, which was from time to time deposited by Norcum with Mielke. The testimony of Sale and McLauren establish this indisputably. Norcum's only account with Mielke was kept in his own name. McNeill's estate was not even known on Mielke's books, and it was impossible from the very nature of the account kept by Norcum that Mielke could know that the money, or any part of it, deposited by Norcum with him, belonged to McNeill's estate. Admit, however, that all or a large portion of the money thus deposited, was in fact the funds of McNeill's estate, and what position would it place Mr. Norcum in ? He would be receiving for his own benefit large amounts of illegal interest on the money of his intestate. No such interest was allowed the estate in the Probate Court, nor in fact was any mention made there of these money-dealings, nor of the certificates of deposit. We hear not a syllable of McNeill's estate having any money in Mielke's hands, until after Norcum returned from St. Louis, and found he had failed. His conversation with Sale (see S.'s answer to the 7th interrogatory) may shed some light upon the subject. Mr. Norcum then apprehended loss, and his question to the witness indicates unmistakably the channel in

which his thoughts were running. He was then endeavoring to ascertain if he could not lift the loss from his own shoulders. But so far as the merits of this case, or the result of it is concerned, it does not make a particle of· difference who the money belonged to. The only question to be determined is, what was the consideration of the notes? No matter how often they were renewed, or in whose favor they were drawn, if they were originally tainted with usury, it will follow and adhere to them in every change. On this point, the case of *Coulter* v. *Robinson*, 14 S. & M. 18, will be found conclusive. See also *Torny* v. *Grant*, 10 S. & M. 89.

The contract must be purged not only of the usurious interest, but no interest whatever can be allowed. See the case of *Parkman* v. *McKinney*, 12 S. & M. 631, decided since this bill was filed.

FISHER, J., delivered the opinion of the court.

This is an appeal from a decree of the Superior Court of Chancery.

The bill was filed by Archibald McLaurin, as administrator, and Virginia Mielke, as administratrix, of the estate of Edward C. Mielke, deceased. The object of the bill was to enjoin a threatened sale, under a deed of trust, executed by the intestate, in his lifetime, upon certain lots, in the city of Vicksburg, to secure the appellant, Norcum, in the payment of two promissory notes, and accruing interest thereon, payable in one and two years from date. The facts are briefly as follows : Mielke was a banker in the city of Vicksburg. He and Norcum, in the autumn of 1841, entered into an agreement, to the effect, that the *latter* should deposit his money with the former, and should receive upon the money thus deposited, interest at the rate of ten per cent. per annum, until it should be paid out on Norcum's checks. It appears, that during the years of 1842, 1843, and 1844, sundry deposits were made by Norcum. That interest accounts were at sundry times made out, showing a balance of interest in his favor, which was also passed to his credit, as so much money. That some time before the notes in question were given, the parties had a settlement, when it appeared that Mielke, on account of their numerous transactions, was indebted to Norcum in the sum of $6000, a portion of which consisted of the interest which had accumulated under the. above agreement, at ten

per cent. per annum; that Mielke then gave Norcum three certifi-
cates of deposit, payable at different times, for the above sum,
upon which interest appears to have been calculated at ten per
cent. per annum, and added to the $6000. The notes in question,
to secure which the deed of trust was executed, were given to take
up these certificates of deposit. The bill alleges, that the larger
portion of the debt thus secured, consists of the illegal interest
agreed to be paid by Mielke to Norcum, and that there is really but
a small balance due upon the notes.

It is further alleged, that Mielke's estate has been regularly de-
clared insolvent, by the Probate Court of Warren county; and it is
under this showing, that the complainants insist that they ought, as
administrators, to be allowed to maintain this bill, to restrain a sale
of the real estate under the deed of trust.

On behalf of the appellant, it is insisted in the first place, that
under the terms of the agreement entered into between the parties,
in the autumn of 1841, he was entitled to receive interest on his
deposits, though made after the Act of 1842 took effect, at the rate
of ten per cent. per annum.

Secondly. That on the death of Mielke, his real estate descended
to his heirs at law, and that as it is not shown that the complain-
ants, as administrators, have obtained an order of the Probate
Court for the sale of such real estate, they cannot maintain this
bill; and,

Thirdly. That the money secured by the notes is due to Norcum,
as administrator of the estate of McNeill, and not to him indivi-
dually.

As to the first point, it is insisted that the agreement of 1841
can be upheld under the exception made by the Act of 1842, chang-
ing the rate of interest, which exception is as follows: " The pro-
visions of this Act shall not affect contracts entered into previous
to its passage." Hutch. Code, 643. If the contract were one
which by its terms could bear interest, or upon which the law
would allow interest as the consequence of its violation, the position
assumed would doubtless be correct.

But such is not the nature of the contract. It is not a contract
evidencing the loan of money, but only, at most, an agreement to
make loans at a future day. If either party could maintain an

action for its violation, it would certainly not be for any definite or specific sum upon which interest could be calculated, but for unliquidated damages; and even if interest could be calculated, it would certainly not be interest arising from the agreement of the parties, but only such as the law would give for the non-performance of the contract.

To determine whether the transaction can be sustained under the agreement of 1841, we must determine whether the interest accrued alone in virtue of that agreement; for the only question is, what contract produced the interest? If there had been no deposit of money with Mielke, there would have been no interest due to Norcum. Interest accrued, and was allowed on the deposit, and not on the contract of 1841. Money deposited on the first day of June, 1842, was money on that day, for the first time, placed at interest. And the inquiry must be, what contract could the parties then legally make, as to the rate of interest to be paid by one, and to be received by the other, on account of the money that day deposited. Each deposit must, so far as the interest is concerned, be regarded as a separate contract; for it is this contract which creates the obligation to pay interest. The question is at once settled, when the contract which bears the interest is ascertained.

We will now proceed to consider the second point urged by counsel.

It is true, as argued, that Mielke's real estate, upon his death, descended to his heirs at law; but it is nevertheless true, that it was chargeable with the payment of his debts, in the event of the personal estate proving insufficient for that purpose. The declaration of insolvency was virtually a declaration that the real estate should, within a reasonable time, be subjected to the payment of the debts owing by the intestate, for the reason, that the court, in pronouncing this judgment, acted with reference to the actual or supposed value of the real estate. The declaration of insolvency is, to say the least, a judgment that the debts can only be paid by converting the realty into money for that purpose. The administrators are, by this act, clothed with authority to make the application for an order of sale, which, without the declaration of insolvency, or insufficiency of the personal estate, or that the interest of the

estate would be better promoted by a sale of the realty, than by a sale of the slaves, they could not exercise. Unless the heirs-at-law can make a sufficient showing to the contrary, the order of sale after the declaration of insolvency, would follow, as a matter of course, for the reason already stated, that the main fact, that of a necessity for such sale, has been adjudicated. The case must be distinguished from that class of cases, where parties invoke the aid of a court of equity to recover property to which they allege they have a complete equitable title. It is not necessary, in the present case, that the complainants should show a title to the lots in question, to authorize the court to grant them the desired relief. The aid of the court is invoked, not to protect their title, but on the ground that they have a high moral and legal duty to perform, in regard to the subject-matter in litigation; and that if the threatened sale should be consummated, this duty, in the faithful performance of which creditors are interested, cannot be performed. The object of the bill is to protect property from sale under a deed of trust for a large sum, when it is insisted that only a nominal sum is due to the party urging the sale. And it may be supposed that the fund for the payment of the debts will be increased to the extent that the demand asserted by this creditor shall be diminished. The bill being certain, both as to the nature of the duty to be performed and as to the benefit accruing to the estate from its performance, ought to be sustained.

In regard to the third point, that the money secured by the notes belongs to the estate of McNeill, but little is required to be said.

The testimony shows, that this money was deposited by Norcum, to his credit; that it was brought under the same general business arrangement with Mielke, and that it was not a distinct business transaction, until made so in their settlement. Norcum could make no contract as administrator to loan the funds of McNeill's estate, at a rate of interest which he could not make as an individual. Parties are absolutely essential to all contracts. Mielke was the party stipulating to pay, and Norcum the party agreeing to receive, the interest on this money, as upon all the other transactions of the parties; and the question must be, what it would be in any other case? Was what one agreed to pay and the other to receive,

sanctioned, or rather was it not condemned by the law? It is no answer for the party receiving the interest to say, that he does not intend to enjoy the benefit of it himself. The question is, was the contract which he made, and under which he received the interest, in violation of law?

It is lastly insisted, that the bill can only be maintained for the purpose of avoiding the usury, or, in other words, the difference between ten and eight per cent. per annum.

Whatever the rule may have been once considered on this subject, it is now firmly settled otherwise in this court. There is nothing in the case at bar, presenting it in a more favorable light, than the cases in which the rule has been settled. It does not present merely the question of usury in regard to the rate of interest provided for by the notes in controversy; indeed this question does not arise; but what is now the principal of the notes, was the interest which had accumulated under the illegal contract already noticed. The main object of the bill is to reach the consideration of the notes, and to strike from them the amount which accrued under the usurious contract between Mielke and Norcum, and in virtue of which they made their settlement, and closed their business finally by the notes in question.

Thus viewing the question, it will at once be seen, that the case falls strictly within the rule established by former adjudications.

No objection appears to be made to the decree, so far at least as the amount is concerned. The trustee is at liberty to sell or not, as the creditor may prefer, for the balance found to be due, and this we consider proper.

Decree affirmed.