AMERICAN FREEHOLD LAND & MORTGAGE COMPANY ET AL. *v.*
J. T. JEFFERSON ET AL.

1. USURIOUS CONTRACT. *By what law governed. Void stipulation.*

The laws of this state and access to its courts cannot be the subject of contract. If a contract for the loan of money be usurious under the laws of another state, by which it is governed, the courts of this state will not respect a stipulation therein that, in case of litigation, it shall be governed by the laws of this state; and this, although the loan be secured by mortgage on land here.

2. VOID CONTRACT. *Equitable relief. Complainant must do equity.*

Though a contract be usurious, or void under our laws, so that no action can be maintained, either in law or in equity, for its enforcement, a party thereto cannot invoke the aid of the chancery court to be relieved against the same unless he submits to do equity. *Deans v. Robinson*, 64 Miss., 195. The rule applies although complainant seeks to enjoin a foreclosure *in pais* of a trust-deed given to secure a usurious debt.

3. SAME. *Comity. Contracts made in another state. Rule here.*

The principle of comity, under which a contract, void in another state where made, will not be enforced by the courts of this state, though, if made here, it would be valid, cannot be extended to abrogate the settled and controlling rules by which our courts of equity are guided—such as the rule that a complainant seeking equity must do equity.

4. SAME. *Usurious contract of another state. Relief in equity.*

Where our courts of equity are appealed to by a debtor seeking relief against a usurious contract which is governed by the laws of another state, they will apply the general doctrine of equity, regardless of the terms of the contract or of our statutes as to usury, and will require that complainant do equity, by refunding or tendering, with his bill, the principal of the debt, with legal interest. *Parchman v. McKinney*, 12 Smed. & M., 631, explained and distinguished.

5. SAME. *Usurious contract. Stipulation for attorney's fee.*

Since the chancery court, in determining the amount to be paid by such complainant as a condition of relief, is not controlled by the terms of the contract, a stipulation therein for the payment of attorney's fees, in

case of litigation or foreclosure, will not be regarded. It must fail with the contract, of which it is a part.

6. CHANCERY PLEADING. *Relief against usury. Offer to do equity.*

In such case, the bill will be demurrable unless it shows an offer to do equity—that is, either a tender of the principal and legal interest, and, this being refused, the bringing of the same into court, or an offer by the bill so to do.

7. SAME. *Bill for accounting. Insufficient allegation.*

If such bill fail to show or make such tender, it cannot be maintained as a bill for an accounting, although it prays therefor; unless it alleges that complainant does not know, and cannot, by proper diligence, ascertain, the sums received and paid by him on the usurious contract.

FROM the chancery court of Coahoma county.
HON. W. R. TRIGG, Chancellor.

The opinion states the facts. It may be added that the statutes of New York provide that contracts for the loan of money at a rate greater than six per cent. per annum shall be void; and, further, that the court of chancery shall decree such contracts void, and enjoin any prosecution thereon, and order the same to be surrendered and canceled. 3 Rev. Stat. N. Y., 2254, § 8.

In Tennessee it is usurious to contract for more than six per cent. per annum. Code of Tenn., p. 471.

*Watson & Fitzhugh*, for appellants.

We concede that, since *Parchman* v. *McKinney*, 12 Smed. & M., 631, it is the law in cases arising under the Mississippi statutes, that a debtor seeking, in chancery, relief against a usurious contract, need not offer to do equity, but this case, and the others which follow it, do not apply where the contract sought to be canceled is governed by the laws of another state. In such cases the general equitable doctrine will be applied, and the debtor must refund what he has actually received, with lawful interest. 1 Pomeroy, Eq. Jur., § 491; 2 *Ib.*, § 937; 1 Story's Eq. Jur., §§ 64, 301; 2 Jones on Mort-

gages, § 1806; 1 High on Injunctions, § 447; Tyler on Usury, 435; 1 Heis., 636.

This was the doctrine in New York until its statute took away from courts the power of imposing terms upon the borrower. 1 Pomeroy, Eq. Jur., 391, note 2. The general doctrine is well recognized in Mississippi. *Deans* v. *Robinson,* 64 Miss., 195; *Duncan* v. *Moore,* 67 *Ib.,* 136; *Hamilton* v. *Halpin,* 68 *Ib.,* 99.

In *Parchman* v. *McKinney,* Judge Sharkey expressly recognizes the general rule requiring the party to pay the principal and legal interest, but held it was not applicable to the facts of that case, because (1) the rule originated under the rigid provisions of the statute of 12 Anne, which made all usurious contracts void, and imposed heavy penalties on the usurer, but the Mississippi law docked the interest only, and inflicted no punishment on the lender; (2) it was not against conscience for the complainant to seek the remedy prayed for, because he did not have the defendant's money in his pocket, there having been no loan of money. The learned judge dwelt at length upon the fact that the parties had provided a summary remedy by foreclosure, and that the complainant had no remedy at law, and that, therefore, the complainants stood on the same ground that a defendant does who is making his defense at law. The case of *Marks* v. *Morris,* 4 Henning & Munford, 463, and the same case in 2 Munf., 407, cited in support of his reasoning, was unfortunate, since that decision has been repeatedly overruled by the Virginia court. See 17 Gratt., 26; 8 *Ib.,* 22; 3 *Ib.,* 173.

We submit that the fact that the parties have provided a summary remedy does not have the effect of putting the complainant in equity in the attitude of a defendant sued at law. *Deans* v. *Robinson, supra; Fanning* v. *Dunham,* 5 Johns. Chy., 122.

We submit that *Dickerson* v. *Thomas,* 67 Miss., 777, is not authority for the position that the complainant is not required to tender the amount received with legal interest.

The court was not considering contracts of other states. As applied to them, the language of that opinion is too broad, for it is evident that the court was considering the case with reference to our statute. If this view of the law be correct, it is immaterial whether the contract be a Tennessee or a New York contract.

The New York statute, which permits the debtor to resort to equity for relief against the usurious contract without offering to do equity, has no force in Mississippi. Vattel says: "It belongs exclusively to each nation to form its own judgment of what its conscience prescribes to it of what it can do or cannot do, or what is proper or improper for it to do." 3 Am. & Eng. Enc. L., 508, 514.

*McDowell & McGowan* and *George Gantt*, for appellees.

1. The appellants cannot avail of the stipulation in the trust-deed that the contract embodied therein and the note should be construed according to the laws of the state of Mississippi. The bill alleges that this was inserted for the fraudulent purpose of evading the usury laws of Tennessee and New York. The demurrer admits the allegations of the bill. It cannot, therefore, operate as an estoppel, and it is well settled that such agreements will not be allowed to nullify usury laws. 3 Cold., 31; 4 Lea, 160.; 1 Heisk., 495; 3 Head, 249; *Brown* v. *Freeland,* 34 Miss., 179; Story, Eq. Jur., § 293.

2. Complainants are not required to offer to do equity by paying the principal and interest. The note is void, both by the law of Tennessee and that of New York. The courts of Mississippi, by the law of comity, will enforce the right of complainants as provided by the laws of New York. Independently of the laws of New York, equity will enjoin a sale under the trust-deed to enforce the collection of a usurious note without a tender of the principal until an account can be had to ascertain the amount of usury in the note and the

amount paid. This is true in Mississippi. *Parchman* v. *Mc-Kinney*, 12 S. & M., 631.

3. The mere taking of security, as was done here, does not affect the validity of the contract with regard to the legal interest that may be taken. 37 N. Y., 450; 10 Wheat., 367; 14 N. J. Eq., 56; 88 Pa., 118; 10 Wis., 333. Appellant cannot avoid the death-warrant placed upon his usurious contract by the laws of New York by coming into this state to enforce the contract *in pais.*

4. The courts of New York uniformly acknowledge the law of comity, and the courts of this state will do the same. 34 N. Y., 217; 12 *Ib.*, 495; 3 Duer, 648; 24 Barb., 688.

Appellant is seeking to enforce the collection of a void note in this state, and appellee stands in the same position as a defendant against whom suit is brought thereon. *Parchman* v. *McKinney, supra; Norcum* v. *Lum*, 33 Miss., 299; *Long* v. *McGregor*, 65 *Ib.*, 70; *Dickerson* v. *Thomas*, 67 *Ib.*, 777.

An accounting is necessary to ascertain the amount due, and the sale under the mortgage will be enjoined until the amount is ascertained. In such case no tender is necessary. *Meaders* v. *Gray*, 60 Miss., 400; *Dickerson* v. *Thomas, supra; Rozelle* v. *Dickerson*, 63 *Ib.*, 538; *Norcum* v. *Lum, supra; Union Bank* v. *Eraser*, 63 *Ib.*, 231.

*D. A. Scott,* on the same side.

The recital in the trust-deed that complainants were citizens of the county of Coahoma, and the stipulation that the contract should be governed by the laws of Mississippi, cannot be availed of. The bill alleges that they are untrue, and inserted to avoid the usury laws. If the words of the contract are to be taken as representations estopping both parties, then all contracts must be deemed valid which appear so on their face, and not only usury but fraud and duress can no longer be alleged or relied on. Tyler on Usury, 420; 22 N. Y., 312; 10 S. W. Rep., 626.

The fact that the land upon which the trust-deed is given is in Mississippi, does not require the contract to be governed by the laws of this state. 70 Am. Dec., 78.

In construing the questions involved, the original agreement between the parties must be looked to—their real intent, and not the form in which they have put the contract. 93 Am. Dec., 333; 1 Paige, 220; Story, Conflict Laws, 280; 13 Peters, 65, 519; 10 Wheat., 367; 53 Barb., 350; 46 *Ib.*, 279; 10 Wis., 333; 3 Am. & Eng. Enc. L., 550, notes 2 and 3.

The doctrine that he who seeks equity must do equity has no application to a case like this. This has been repeatedly decided in this state. *Parchman* v. *McKinney*, 12 Smed. & M., 631; *Norcum* v. *Lum*, 33 Miss., 299; *Chaffe* v. *Wilson*, 59 *Ib.*, 42; *Rozelle* v. *Dickerson*, 63 *Ib.*, 538; *Dickerson* v. *Thomas*, 67 *Ib.*, 777.

This case is not analogous to those where a debtor seeks to escape payment of his debt because his creditor has failed to pay a privilege tax on his business. In such cases it is held that a debtor coming into equity must do equity, but in that case the debt is not absolutely void, but the creditor is simply prohibited from suing upon it.

*Calhoon & Green*, on the same side.

Since the decisions in the cases of *Parchman* v. *McKinney*, *Long* v. *McGregor*, *Norcum* v. *Lum* and *Dickerson* v. *Thomas*, it is settled that the grantor in a trust conveyance may invoke equity, in the case of an executory contract, to avoid a usurious security enforceable *in pais*, without making any tender of the legal interest. This is the law of the forum, pertains to the remedy, and may be availed of, regardless of whether it obtains in the state where the contract is made or is to be performed. By the law of the place of making and the place of performance, this contract is void. Accordingly, this is not a question of forfeiture, which equity abhors, but is a question whether our courts will permit the property here to be

sold under a void contract.     We submit this is a New York contract, and accordingly void.     19 N. E. Rep., 25.

If the recitals in the trust-deed cannot estop parties, the question of usury will be merely one of draughting papers. The mere recital of a falsehood would circumvent the usury laws.     Parties cannot contract in reference to the laws of a third state, where none of them reside, and thus avoid usury laws.     Such a stipulation is manifestly a violation of public policy.

The fact that the land lies in this state is no reason why its laws should prevail.     Usury consists in giving and accepting a promise, not in the security for it performance.     1 Jones, Mortgages, § 661; Wiltze on Foreclosures, § 345.

Appellees are actually defendants to a proceeding *in pais* to enforce a usurious contract.     They may, therefore, set up the usury in a bill for injunction.     10 Barb., 558; Clarke, Ch., 482; 5 Johns. Ch., 35.

Argued orally by *J. H. Watson*, for appellant, and *W. W. McDowell* and *S. S. Calhoon*, for appellees.

Cooper, J., delivered the opinion of the court.

The appellees exhibited their bill in the chancery court of Coahoma county against the American Freehold Land & Mortgage Company and J. H. Watson, trustee, in a deed of trust executed by them to secure certain notes to said company. The purpose of the bill is to perpetually enjoin said defendants from causing sale to be made, in compliance with the powers contained in said deed, for the payment of the notes, and also to have such security canceled.

The bill charges that the appellees, in March, 1886, were residents of the city of Memphis, Tennessee, and the defendant company was a corporation incorporated by the state of New York, and having its domicile there; that on said date appellees executed their note to said company for the sum of $25,000, payable at the office of the Corbin Banking Company,

in New York city, on March 10, 1891; that interest on said note was to be paid at the rate of eight per cent. per annum, for which complainants executed their six coupon notes—one for $1,444.46 payable December 1, 1886, four for $2,000 each, payable, respectively, on the first of December. 1887, 1888, 1889 and 1890, and one for $555.55, payable March 10, 1891, all of said coupons being also payable at the office of the said Corbin bank, and all of them to bear interest at ten per cent. per annum from maturity; that said principal note contains a stipulation that if default shall be made in its payment, an attorney's fee of ten per cent. of the principal and interest shall become payable.  The bill avers that the negotiation for the loan of the money was begun and concluded in the city of Memphis and state of Tennessee, where complainants have resided for the past thirty years, neither of them having ever been a citizen of the state of Mississippi, and were conducted between Mr. Jefferson and the agent of the loan company, resident in said city; that, though the note is for $25,000, only $22,000 was paid to complainants, the residue of $3,000 being, in fact, reserved by the defendant company as usury, but covered under the guise of commissions professed to be paid to the agent of defendants, who was recited in the negotiations to be the agent of complainants and paid as such; that, to secure the payment of said note and interest coupons, the complainants executed a deed of trust upon certain lands, situated in Coahoma county, Mississippi, by which deed power was given to the trustee to advertise and sell the lands upon default in payment of said note and coupons, and out of the proceeds of sale to pay said note and coupons; that upon advertisement by the trustee there should become due and payable the sum of $3,750, as attorney's fees for which the deed of trust should also stand as security, and which was to be collected as a part of the secured debt.  The bill also avers that, although the notes were executed in Tennessee, and were payable in New York, and although the complainants

were residents of the state of Tennessee, as was well known to the defendant and its agents, the deed of trust was deceitfully and falsely made to recite that the same was made in the state of Mississippi, and to provide that the contract recited therein, and the notes secured thereby, should be construed according to the laws of the state of Mississippi.

The defendant demurred to the bill, upon the ground, among others, that the complainants sought relief without offering to do equity by paying the money received by them upon the faith of the security sought to be canceled. From a decree overruling the demurrer, an appeal has been granted to settle the principles of the cause.

We cannot assent to the proposition advanced by counsel for appellant that the contract of these parties was a Mississippi contract, and is to be governed by our laws. The authorities cited by him can have no influence, under the circumstances of this case. The presumption of law is always in favor of the legality of purpose and motive of contracting parties; and where a contract is made in one state, to be executed in another, and, under the laws of one would be illegal and under those of the other legal, it is reasonable to presume that the parties intended their contract to be controlled by the laws of the state in which it would be valid, and so the courts will, in furtherance of a presumed lawful intention, assign it to that state by which its validity will be upheld. So, too, there may be cases in which the law of the domicile of the debtor and situs of the security may be applied to a contract made in another state and to be performed in yet a third. We decline to enter this field of investigation, for the reason that the manifest and only purpose of the stipulation in the deed of trust that the contract should be governed by the laws of this state, was, that the creditor might have the advantage of our usury laws, which are less stringent than are those of the state of Tennessee or New York. This is not a case for the application of the rule of favoring a lawful purpose by presumption, but it is one in

which the parties, manifestly and purposely providing for usury, have sought to cloak the transaction and evade the laws against usury by which their contract is controlled, by stipulating that, if litigation shall arise, the laws of another state may be invoked as a shield to the usurer. The laws of this state and access to its courts cannot be thus made the subject of contract.

It is unnecessary to determine whether the contract involved is to be governed by the laws of Tennessee or by those of New York. It is conceded by the appellant that it is usurious under either, and that in neither could any action be brought and recovery had on the note or interest coupons.

This may be conceded to the complainants, and it may also be admitted that, in an action by the creditors, either at law or in equity, nothing could be recovered in the courts of this state. All this may be conceded, and yet the question remains whether the complainants, with the money of the appellant in their hands, and, without an offer to return it, can be afforded relief by a court of equity in this state under the principles which prevail here.

'It is well settled here that, though a contract be declared void by our own laws, by reason of which no action can be brought for its breach, a court of equity will decline to intervene unless the complainant will submit to do what *ex œquo et bono* he ought to do, regardless of the terms or invalidity of the contract. *Deans* v. *Robinson*, 64 Miss., 195.

We recognize the principles of comity which prevail, and under which a contract void where made will not support an action in the courts of another state, even though by the laws of such state, the contract, if it had been there made, would have been a lawful one; but this principle has never been so extended as to abrogate the settled and controlling rules by which the courts of the state whose comity is invoked are guided. If the complainants and defendant were residents of this state, and had here made a contract prohibited by our laws, and the complainants had executed a security

to be enforced *in pais*, and, under the void contract, had secured the money of the defendant, it is not be doubted that our courts of equity would decline to entertain a bill for relief against the security at their instance, except upon condition of their doing equity.

It would be extending the rule of comity beyond all reasonable limits, if the courts of this state should afford relief against an agreement made in another state, and to a nonresident complainant, under a state of facts in which, if the controversy was between our own citizens and in relation to a transaction occurring here, relief would be denied. The complainants, appreciating the difficulty of securing a decree canceling the mortgage as security for both principal and interest, seek by their bill to obtain an accounting of the amount of money loaned to them by the defendants, and of the payments made by them as interest on the same, and ask that on such accounting all interest reserved be forfeited, and all payments of interest heretofore made be applied to the extinguishment of the principal, or, if this be denied, then that all interest in excess of the legal rate be so forfeited and applied. They also seek relief against a stipulation in the notes and deed of trust by which they agree that, if default should be made in the payment of the notes, and a·suit at law or in equity should be instituted for their enforcement, or, if the trustee should advertise the mortgaged property for sale for the payment of the debt, an attorney's fee of $3,750 should thereupon become due and payable, for the payment of which the mortgage should stand as security.

It is contended by complainants that, whatever may be the rule or conditions imposed by courts of equity in this state under which relief will be granted, as against other agreements, it is the settled doctrine here that relief will be granted as against usurious contracts which are secured by mortgages or deeds of trust with power of sale, or by other instruments enforceable *in pais*, without an offer by the complainants to do equity; and that, where an accounting is necessary to de-

termine the amount really and equitably due, no such offer
or tender is required. It is also said that, where relief is
sought in equity against an executory usurious agreement,
all interest unpaid will be forfeited, and that which has been
paid will be applied to the extinguishment of the principal
of the debt.

There is support for these propositions to be found in the
argument of Judge Sharkey, in *Parchman* v. *McKinney*, 12
Smed. & M., 631, and for some of them in the decision in that
case, and in other subsequent decisions of this court. Some
things said by Judge Sharkey, in argument in that case, have
been denied to be correct, and a contrary rule established by
subsequent decisions. It is important, therefore, to note what
was decided in that case, and how much of what was therein
said was only the argument of the judge in support of the con-
clusion reached by the court. To determine what was de-
cision, it is important to know what the facts averred in the
pleadings and disclosed by the evidence, were. The conclu-
sion of the court upon these facts constitutes its decision, but
the process of reasoning by which that conclusion was reached
is not necessarily decision, and, in many instances, is not.
Parchman exhibited his bill against McKinney, averring that
John Parchman, his intestate, had bought from McKinney,
in the year 1835, a certain tract of land, at the price of $6,500,
of which he then paid in cash $2,000, and for the remainder
executed his two notes, each for the sum of $2,250, one of
which was to become due January, 1837, and the other, Jan-
uary, 1841; that both notes purported on their face to be for
money loaned, and bore interest at ten per cent. per annum;
that, to secure the note due January, 1841, his intestate had
executed a deed to John H. McKinney, trustee, in trust,
to sell the land thereby conveyed upon the failure of the
maker to pay the note; that the defendant claimed there was
due him the note due January, 1841, and interest thereon,
and also held two other notes of complainant's intestate, one
for about $900 and one for about $400; and that, to enforce

the collection thereof, the defendant had procured the trustee to advertise the land for sale under the trust-deed; that the notes for $900 and $400 were executed on account of the same transaction, and for interest, at a usurious rate, upon said note of $2,250, due January, 1841; that, during the life-time of his intestate, he paid to the defendant, on account of said two notes of $2,250 each, the sum of $5,300; that upon a just and legal computation of interest upon said debt, the balance due thereon, if any thing, did not exceed $1,125, which had been tendered to the defendant by way of compromise, but which he refused to accept or receive; that at the time of the purchase of the land and execution of these notes, it was corruptly and unlawfully agreed between the defendant and complainant's intestate that said intestate should pay McKinney interest at the rate of ten per cent. per annum, upon the amount of said notes, from December 25, 1835, until their maturity, as for borrowed money, and that this agreement was made with the fraudulent intent of evading the statute against usury. The answer of the defendant admitted the usurious character of the contract, admitted that payments had been made by the intestate to an amount between three and four thousand dollars, but said he was unable to state certainly how much was paid by him. He further stated that the notes originally given by the intestate matured in January, 1836 and 1837, and that, after payments had been made, said intestate, in December, 1837, executed a new note for $2,250, and made the deed of trust to secure it. The proof showed that the defendant compounded the interest on the debt from December, 1835, until April, 1844, the time of the last settlement with intestate; that when notes were taken for interest, as was the case at the end of each year, these interest-notes were to bear interest at ten per cent. as for money loaned; that the principal and interest, as it accrued and became due, were compounded annually at ten per cent., from the beginning to the end of the transaction, in April, 1844. Upon final hearing, the court directed an ac-

count to be stated, by which the defendant was allowed interest at the legal rate, and from a decree on such an accounting the administrator appealed.

The question for determination was whether the defendant should have been allowed any interest. For the defendant it was insisted that, since the complainant had invoked the interposition of a court of equity, he must submit to do equity, and that it was but equitable that the principal, with legal interest, should be paid.

The decision of the court was that, under our then statute against usury, upon the facts above detailed, the defendant was not entitled to any interest upon his debt. Judge Sharkey began the investigation of the question by stating that the current of authority undoubtedly was that the defendant should be paid interest at the legal rate, but inquired : " Can the rule be adopted in the present case ? "   He then proceeded to show that the rule, as applied generally, was under statutes by which both interest and principal were forfeited, and noted that by our statute the interest only was docked, leaving the right to the principal unimpaired, and no punishment was inflicted on the offender. He then argued to show that the debtor had had no opportunity of defending in a suit at law, and declared that he stood " upon the same ground that a defendant does who is making his defense at law when sued on a usurious contract; " and then continued : " but, above all, the statute made to prevent usurious contracts is protected, its end and object accomplished; it is not made the instrument of fraud. The general rule is that equity must follow the law, and they cannot depart from it without some obvious reason. For these reasons it would seem that the general rule requiring the party to pay the principal and legal interest, cannot apply in this case, and this accords with the opinion of the chancellor in *Marks* v. *Morris*, 4 Hen. & Mun., 463, which was a very similar case. The bill was brought for relief against deeds of trust, which the trustee was about to carry into effect, on the ground of usury, and,

against the same objections here raised, the party was held entitled to interest. Perhaps this question might have been made to rest entirely on a fair construction of the statute, H. & H., 374. After providing the rate of ten per cent. interest for a loan of money, and so expressed on the face of the instrument, the statute proceeds: '*Provided*, that if any contract, bond or note, founded on any other consideration than the *bona fide* loan of money, shall fraudulently and deceitfully express therein that the same is entered into or given for money lent, and specify a greater rate of interest than is allowed by this act, if such fraud or deception shall be discovered in any suit at law or in equity, no interest or premium shall be allowed or recovered on such fraudulent contract, bond or note, but the principal sum only shall be recovered.' This provision seems to be sufficiently broad to extend to actions brought by either party, and it expressly extends to courts of equity, and thus furnishes a law for those courts. And we have precisely the description of case described by the statute—one that fraudulently and deceitfully expresses on its face that it was given for money lent."

The able judge evidently labored in his argument, which, though vigorous and clearly expressed, as were all his utterances, is not marked by that adherence to well-settled principles for which his opinions have been justly esteemed. His reference to the maxim that equity follows the law was exceedingly unfortunate, in view of the fact that but a few lines above he had conceded that the current of authority undoubtedly was that equity would not relieve, as against an usurious contract, except upon terms, and that "the rule originated under the provisions of the statute of 12 Anne, which made all usurious contracts void, and imposed heavy penalties upon the usurer." In other words, that the rule was announced by courts of equity in mitigation of, and opposition to, the rule of law. Nor could the learned judge have been oblivious of the fact that a favorite device of the usurers in England for evading the consequences of usury

had been to take warrants of attorney for confessions of judgment, under which the debt could be reduced to judgment without notice to the defendant. Indeed, so common had become that practice that the courts of common law began to exercise an equitable jurisdiction by awarding a feigned issue upon motion suggesting that the judgment was upon an usurious contract, and, upon the fact of usury being found, vacating the judgment.

In *Fanning* v. *Dunham*, 5 Johns. Ch., 122, Chancellor Kent reviewed many of the English cases where relief had been granted by the courts of common law in England.

In *Fanning* v. *Dunham* the complainant sought relief in equity against a judgment entered upon a power of attorney, and also against the execution of a power of sale *in pais* conferred by a mortgage given to secure the debt, which was alleged to be usurious. There, as in *Parchman* v. *McKinney*, the complainant sought by his bill to have all the securities taken by the defendant and infected with usury, declared void and ordered to be canceled, without offering to pay any thing. But Chancellor Kent, after a full review of the cases, declared that, "the equity cases speak one uniform language, and I do not know of a case in which relief has ever been afforded to a plaintiff seeking relief against usury by bill, upon any other terms. It is the fundamental doctrine of the court. Lord Hardwicke said (1 Vesey, 320) that in cases of usury equity suffers the party to the illicit contract to have relief, but whoever brings a bill in cases of usury, must submit to pay principal and interest."

Judge Sharkey was unwilling to rest his opinion upon the proposition that a court of equity follows the law, and that a contract void at law will, for that reason, be relieved against in equity without terms, or upon the feature of an absence of an opportunity to defend at law; for finally he declared that the statute itself, by reason of its peculiar terms, should control courts of equity as well as of law, and also that, in furtherance of the *policy of this state*, finding expression in the

statute, the same rule should apply whether the debtor was defending in a suit at law or in equity, or was a complainant in equity seeking relief.

This court, in *Deans* v. *Robinson,* 64 Miss., 195, declined to accept the suggestion made in the argument of *Parchman* v. *McKinney,* that the absence of an opportunity to defend against the demand at law, because the debtor had given a mortgage with power of sale, was sufficient ground to warrant a court of equity to relieve against a contract void at law, without requiring the complainant to submit to do equity.

The case of *Parchman* v. *McKinney* has been adhered to, on the principle of *stare decisis,* to the extent in which it was decision. But the argument of Judge Sharkey has never been assented to as correct, beyond the rule that, in support of the public policy of this state, contracts which are obnoxious to our statute against usury, made here or governed by our law, will be relieved against in equity, and that, whether the debtor be defendant against whom relief is sought, or complainant seeking relief, payment of the principal debt, without any interest, was all that should be required. It was not held in *Parchman* v. *McKinney,* nor has it been in any case following it, that the complainant would not be required to do equity, as a condition upon which relief would be granted. The question was, what should equity require him to do? And, in construing our statute, the court concluded that it would be equitable for him to pay only the principal of the debt. *Norcum* v. *Lum,* 33 Miss., 299; *Hooker* v. *Austin,* 41 *Ib.,* 717, and *Long* v. *McGregor,* 65 Miss., 70, were cases in which decrees had been rendered on final hearing, as was *Parchman* v. *McKinney,* and followed the decision of *Parchman* v. *McKinney,* in so far as to declare that the complainant should only be required to pay what might have been recovered at law.

In *Dickerson* v. *Thomas,* 68 Miss., 156, it was held that a complainant, seeking to recover back usurious interest paid by him (the usurious contract having been fully executed),

could recover only the excess above the legal rate. Certainly, under all our decisions, if the contract between the complainants and the defendant had been entered into in this state, and had been usurious under our laws, the complainants would be required to return the money they actually received from the defendant as a condition to securing relief in equity in a bill filed by them.

We cannot perceive any public policy of this state which is to be conserved by applying the rule prescribed by our statute, of forfeiting all interest, to a contract made in another state. This is not a suit upon the contract, and its terms and conditions furnish no standards by which the court is to be guided. The conscience of the court, its appreciation of what is just and equitable, not only here, but in New York and Tennessee, and everywhere, is the sole and sufficient test as to the terms upon which it will afford relief. The complainants got the money of the defendant, by their own showing. They now repudiate the contract by which it was secured, and seek the aid of the court to annul a security given, not alone for the usurious interest, but for the principal as well. Relief will be afforded, but only upon condition that complainants shall do equity; and, by an unbroken current of authorities, it is settled that equity, in a case like this, is to refund the money with legal interest.

In none of the cases above noted, arising under our usury statutes, was the point made by demurrer that the complainants had not offered to do equity. As we have said, the questions were raised on appeal from final decrees on the merits. But in *Deans* v. *Robinson*, 64 Miss., 195, it is decided that a bill for relief is demurrable if it fails to show an offer by the complainant to do that equity without which the court will deny relief. The complainants should have tendered to the defendant the principal sum received by them, with legal interest thereon, and, the tender being refused, should have brought the money into court, or offered so to do by their bill. It may be that the defendant will accept

the offer when made. If it does, no resort to the courts may be necessary.

The case made by the complainants is not sufficient to uphold their bill as one for an account. They know, or may know by proper diligence (so far as the bill shows to the contrary), what sum they received; they know what sum they have paid, and it is, therefore, but a matter of calculation to determine exactly what amount they should offer to pay.

It is proper to add that the stipulation in the notes and the deed of trust relative to the payment of an attorney's fee, falls with the contract, of which it is a part. As we have said, the contract furnishes no guide to the court in determining what sum shall be paid by complainants. It is enough that they return to the defendant its money, with legal interest thereon.

Under the circumstances of the case, we think it improper to make a final disposition of the case here. The appeal was manifestly brought to settle its principles, and it may be that the complainants may desire to amend their bill, and tender to the defendant the money due. In order that an opportunity to do so may be afforded them, the—

*Decree will be reversed and remanded to the court below, with directions to sustain the demurrer.*