CASTLEMAN et al. v. CANAL BANK & TRUST Co.

(Division B. Oct. 8, 1934. Suggestion of Error Overruled Nov. 19, 1934.)

[156 So. 648. No. 31304.]

Louis Cochran, W. M. Denny and Earl Brewer, all of Jackson, and Archer W. Cochran, of Baldwyn, for appellants.

Dart & Dart, of New Orleans, Louisiana, and **Shands, Elmore & Causey**, of Cleveland, for appellees.

Argued orally by **Louis Cochran**, and **Earl Brewer**, for appellant, and by **A. W. Shands**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

On July 16, 1925, the Canal Bank & Trust Company, of New Orleans, sold the property known as the McDaniel plantation, in Humphreys county, Mississippi, to S. and P. Castleman, residents of that county, at an agreed purchase price of one hundred twenty-five thousand dollars. The property was then incumbered by a first mortgage held by the Mississippi Fire Insurance Company for about thirty-seven thousand five hundred dollars. As a part of the purchase price the Castlemans assumed this first mortgage and gave the bank a series of eight notes to evidence the balance. In 1928 the insurance company determined to foreclose its first mortgage unless paid, and Castleman, being unable to make the payment, applied

to the bank for assistance. As a result of the negotiations between the parties, it was arranged that the insurance company would foreclose, the bank would buy at the foreclosure, would then make another conveyance to the Castlemans, and they, in turn, would execute a deed of trust with new notes, all in such form that the entire indebtedness and security could be transferred to a farm mortgage company and thus relieve the bank of it. In order to make it possible to discount this large indebtedness to a mortgage company, it was deemed advisable that a profit or bonus or discount to the prospective mortgage company should be provided, in the sum of twelve thousand five hundred dollars.

The agreed arrangements were carried out, except in the particular last above mentioned. In calculating the amount of balance due, with interest, on the previous Castleman purchase-money notes, so far as unpaid, plus the fire insurance company's first mortgage notes with interest, plus the twelve thousand five hundred dollar bonus, the aggregate amount was found to be one hundred forty-one thousand four hundred twenty-six dollars and thirty cents, and on December 28, 1927, the Castlemans executed three notes to cover, with interest at seven per cent.; and as of the same date they gave a deed of trust on the property to secure the payment of the said notes, and all the previous purchase-money notes were canceled and surrendered.

The mortgage company which the parties had in mind as the prospective purchaser of these notes and the deed of trust securing the same was the Canal Mortgage Company, Inc., of New Orleans, and the notes and deed of trust were drawn payable to that company or bearer. The notes appear on their face to have been executed in New Orleans, and were payable at the Canal Bank & Trust Company in New Orleans, and the deed of trust carried the following express stipulation: "All rights

of the note holders shall be admeasured by the laws of the state of Louisiana, which are hereby expressly adopted to control this entire transaction.'' When the notes and deed of trust were delivered to the bank, it was found that an error in the calculation of the aggregate amount due had been made in preparing the notes and deed of trust; this error being in the sum of five thousand two hundred twenty-three dollars and twelve cents, and this was at once credited upon the first note, thus making the total amount of the notes one hundred thirty-six thousand two hundred three dollars and eighteen cents. The bank failed to obtain a purchaser of the notes and deed of trust, and later the notes were credited with the aforesaid bonus of twelve thousand five hundred dollars, which reduced the principal of the notes to one hundred twenty-three thousand seven hundred three dollars and eighteen cents. No part of the principal or interest on the amount last stated was ever paid by the Castlemans, as the evidence now discloses.

Some time during the fall of 1932, Mr. Castleman died; and, as apparently the bank had largely depended upon him personally to work out this large indebtedness, the bank determined to foreclose. After Mr. Castleman's death, the attorneys for the administrator and heirs called upon the bank for a full and complete statement of all the various transactions between the bank and the Castlemans, of which there were several loans other than that above outlined, and in heavy amounts, covering a period of not less than six or seven years. This statement was furnished by the bank, but it was unsatisfactory to the Castlemans, and, the notice of foreclosure having been served and published by the trustee, Mrs. S. P. Castleman and the heirs filed a bill praying for an accounting, for a receiver, and for an injunction to restrain the sale under the deed of trust. Upon a preliminary hearing the court declined to appoint a receiver, but allowed the injunction. The complainants, however;

were unable to give an injunction bond, and the sale proceeded, after which the complainants filed supplemental and amended bills.

The first attack upon the deed of trust and the sale thereunder is that the charge of twelve thousand five hundred dollar bonus, included in the notes, operated to forfeit the entire debt, principal and interest, on account of usury. The heirs contend that the said bonus was in consideration of the payment by the bank of the fire insurance company mortgage, and that, since the bonus was more than twenty per cent. of the amount of that mortgage, and since that mortgage indebtedness was integrated into the total of the three notes given on December 28, 1927, the whole of the three notes has thereby become forfeited for usury.

Conceding, but not intimating that we so decide, that, if the transaction is to be solved under the laws of this state, it would be usurious, we must apply the laws of Louisiana on that subject. This transaction was negotiated in New Orleans, the notes were payable there, and the deed of trust carried the express stipulation that the laws of Louisiana were to govern the rights of the parties, which stipulation we have already quoted; and we regard it as the settled law that, when a substantial portion of a transaction has been had and is to be had in one state and a substantial portion in another, the parties may by express terms agree as to which of the laws of the two states are to govern in respect to the obligations of that contract. 2 Wharton, Conflict of Laws (3 Ed.), pp. 919, 920, 1194, 1195; 5 R. C. L., p. 938; 27 R. C. L., pp. 256, 257; 12 C. J., p. 451; 33 C. J., p. 184; 66 C. J., pp. 144, 145. This rule was freely recognized even in the building and loan cases, e. g., Shannon v. Georgia, etc., Association, 78 Miss. 955, 30 So. 51, 57 L. R. A. 800, 84 Am. St. Rep. 657, with which bench and bar are well acquainted. It is, of course, not permissible that, for the purposes of evasion, a fictitious stipulation, in the re-

spect mentioned, may be enforced; but, so long as made in good faith and under admissible facts, such a stipulation is as good in law as any other provision which, under the liberty of contract, the parties may elect to insert in their agreement. There is nothing in this case which the court may take hold of and depend upon as showing that the stipulation mentioned was other than one made bona fides, and, since under Dodds v. Pyramid Securities Co., 165 Miss. 269, 147 So. 328, it was held that a bonus contract, such as here complained of, may be validly made under the laws of Louisiana, we must hold that the stated contention of the complaining heirs is not well taken.

In this connection it is also contended by the heirs that the bank charged interest against this twelve thousand five hundred dollars, and that the amount claimed by the bank and for which the foreclosure was made was, in any event, excessive to the amount of that interest. The statement rendered by the bank before the bill was filed, and which statement was made Exhibit A! to the bill, shows not only that the bank had credited back the twelve thousand five hundred dollars, but had charged no interest on it. As above stated, the amount of the principal of the debt after crediting the twelve thousand five hundred dollars was one hundred twenty-three thousand seven hundred three dollars and eighteen cents, and as of date December 28, 1927. The notice of sale stated that the debt, principal and interest, as of January 1, 1933, the sale being made on March 6. 1933, was one hundred sixty-seven thousand seven hundred twenty dollars and eighty-one cents. A simple calculation on one hundred twenty-three thousand seven hundred three dollars and eighteen cents of the interest from December 28, 1927, to January 1, 1933, at seven per cent. shows that this interest when added to the one hundred twenty-three thousand seven hundred three dollars and eighteen

cents results in a substantial agreement with the sum mentioned in the notice.

The second principal contention of the heirs is that they were not mentioned in the notice given, by the trustee, of the sale under the deed of trust, and they rely upon the language used by this court in ruling upon the suggestion of error in Wilkinson v. Bank, 168 Miss. 646, 150 So. 218, 151 So. 761. That case holds that notice of sale, under the statute then in existence, must be given to the original mortgagor and also to the person who owned the property at the time of the sale and who had assumed the mortgage debt. In that opinion reference is made to the fact that some courts have defined mortgagor as including the heirs of the mortgagor; but this was discussion, not decision. Kroger Grocery Co. v. Lewelling, 165 Miss. 71, 82, 145 So. 726. It may well be true that, when a court lays down and delineates a distinct principle of law as the basis of its decision that case will stand as authority for that principle and its application in another case, although not exactly similar upon the facts, if the facts of the subsequent case are nevertheless distinctly within the definite ruling principle upheld in the previous decision, National Surety Company v. Miller, 155 Miss. 115, 131, 132, 124 So. 251; 15 C. J., p. 941, sec. 332; but mere definitions of words, especially when used argumentatively, can hardly be said to amount to the laying down of a definite and distinct ruling principle, 7 R. C. L., pp. 1003, 1004. On the contrary and as more applicable here, we may quote the language of this court in American Freehold Land & Mortgage Co. v. Jefferson, 69 Miss. 770, 781, 12 So. 464, 466, 30 Am. St. Rep. 587: "It is important, therefore, to note what was decided in that case, and how much of what was therein said was only the argument of the judge in support of the conclusion reached by the court. To determine what was decision, it is important to know what the facts averred in the pleadings and disclosed by the evidence

were. The conclusion of the court upon these facts constitutes its decision, but the process of reasoning by which that conclusion was reached is not necessarily decision, and in many instances is not.'' The proof shows that the heirs had not assumed the mortgage debt or any part thereof, and, therefore, the Wilkinson case is not in point.

We have said that there were several other heavy loans by the bank to the Castlemans. Upon the hearing the course thereof took a wide range, covering these and related matters, and resulted in a record of three large volumes. Many other points of complaint were made by the heirs and have been pressed on this appeal, in response to which we prepared an opinion dealing with each of them in detail. The result of this effort was an opinion of an inadmissible length, and we have therefore finally concluded that we must summarize the remaining points by the statement that the most careful examination has disclosed that none of them is sustained under the facts of this record, and that, as we view it, the decree is correct.

Affirmed.