¶ 1. Jerald Rankin appeals from the dismissal of his suit against Clements Cadillac, Inc. He argues that the trial judge erred in relying on a supposed prior settlement agreement between the parties. He asserts pleading shortcomings and that the settlement was not enforceable. We disagree with both arguments and affirm the circuit court.
 ¶ 2. Rankin was an employee of Clements Cadillac. His manager, Greg Broadhead, terminated his employment on grounds that are in dispute. Each man claimed that the other assaulted him at the dealership. The two filed criminal affidavits against each other. Each of them subsequently employed attorneys. According to an affidavit from Broadhead's attorney, Christopher Klotz, both parties and their attorneys agreed to settle their dispute by seeking the dismissal of the simple assault charges they had filed against each other. According to the Klotz affidavit, they further agreed to relinquish all civil claims either had against the other or against Clements Cadillac.
 ¶ 3. According to Klotz's affidavit, it was on the day that the criminal trials of both *Page 712 
men were to be held, that Rankin's attorney "stated that his client had agreed to release Mr. Broadhead from any and all civil liability and that Mr. Rankin would sign the document soon after the charges were dropped." Rankin's attorney, Sanford Knott, informed Klotz that "Rankin had been physically unavailable recently to actually sign the document, but had told Mr. Knott that he would sign the document fully releasing Mr. Broadhead at his earliest convenience." The affidavit claims that the release had been submitted to Rankin's counsel before the charges were dropped. The release is in the record, and it would have released both Broadhead and Clements Cadillac from liability.
 ¶ 4. The Klotz affidavit states that the charges were dropped. On January 29, 2001, Broadhead signed the release, but the affidavit asserts that Rankin refused to do so. A February 13, 2001 letter from Broadhead's attorney submitted the partially executed release to Rankin's attorney. Instead of signing, Rankin brought the present suit on March 8, 2001. Klotz's affidavit was signed on June 11, 2002, and filed in this litigation eight days later. Rankin signed an affidavit dated July 12, 2002. He explained why he had been terminated at the dealership, but he did not address, much less dispute, any of the assertions in the Klotz affidavit about the agreement to release all claims.
 ¶ 5. Rankin's suit was solely against Clements Cadillac for wrongful discharge; he did not join Broadhead as a defendant. The dealership answered by denying many of the factual assertions and raising as an affirmative defense that Rankin had signed an arbitration agreement. It did not assert as a defense that Rankin had agreed to release them and also to release their employee Broadhead. That issue was raised ten months later by a motion to enforce a prior settlement. The court granted the motion and dismissed Rankin's suit. Rankin has appealed.
 DISCUSSION 1. Settlement
 ¶ 6. Clements Cadillac argues that Rankin and Broadhead agreed to a release of each other and of Clements. A written waiver of civil liability was prepared:
 [We] agree to release, hold harmless, and forever relinquish any right to pursue civil or equitable relief or damages against each other or Mr. Broadhead's business, Clements Cadillac from any and all actions accruing on or about August 14, 2000 which gave rise to each of the above parties filing criminal misdemeanor charges against each other.
As consideration, each party would cause the criminal misdemeanor charges against the other to be dismissed. Broadhead signed the waiver but Rankin did not sign it. Even without the signature, Broadhead argued, and the trial court agreed, that an enforceable agreement had been made between Rankin and himself relinquishing all claims involving the two men and Clements Cadillac.
 ¶ 7. Rankin asserts two arguments regarding the settlement. First, the answer to the complaint never asserted the release as an affirmative defense. Secondly, he argues that the agreement was to release Broadhead and not also to release Clements Cadillac. We examine each issue.
 A. Pleading of affirmative defenses ¶ 8. Clements Cadillac acknowledges that its answer to the complaint did not raise the defense of release. About ten months after its answer was filed, Clements Cadillac filed a motion to dismiss based on the settlement. Rankin's response raised the absence of an affirmative pleading on release. The pleading also *Page 713 
stated that there was no agreement to release a wrongful discharge claim.
 ¶ 9. Answers to complaints "shall set forth affirmatively" a variety of defenses, including that of "release." M.R.C.P. 8(c). Rule 8 does not state what is to occur if such an affirmative pleading is not made and the issue is raised later. The rules do state that they "shall be construed to secure the just, speedy, and inexpensive determination of every action." M.R.C.P. 1.
 ¶ 10. Rankin is seeking to bar consideration of an affirmative defense that was not pled but which was injected into the case before trial. According to the docket, the only filings in this case after the answer and before the dismissal motion was a setting on the motion to compel arbitration and the filing of a motion to substitute defense counsel. The defendant, Clements Cadillac, would have had the right simultaneously with filing the motion to dismiss, to seek leave of court to amend; such leave should be "freely given when justice so requires." M.R.C.P. 15(a). It is to the sound discretion of the trial judge that the motion to amend is addressed. Burrell v. Mississippi State TaxComm'n, 536 So.2d 848 (Miss. 1988). There is nothing in this record to suggest that allowing an amendment at that time would have abused the judge's discretion. This was not on the eve of a scheduled trial; there is no indication that discovery was needed to address what Rankin had agreed to settle.
 ¶ 11. Thus, what this appellate issue resolves into is the argument that a technical necessity existed to amend the answer and not just to raise the matter by motion. Certainly, Rule 8 states that such matter is to be in the answer. Even so, if "issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." M.R.C.P. 15(b). There is no prohibition in Rule 15(b) of applying the trial-by-consent principle to affirmative defenses. Even if there is no consent, the trial judge should allow an amendment to pleadings "when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence [for which amended pleadings are needed] would prejudice the maintaining of the action or defense upon the merits." Id. The circuit judge in this case could easily have permitted an amendment, but he was never requested to do so. Since no assertion of prejudice has been made, there is no substantive interest of a party being claimed, only the potential of a formal right.
 ¶ 12. Other jurisdictions have found that "the substance of many unpleaded affirmative defenses may be asserted by pretrial motions, particularly in the absence of prejudice." 5 WRIGHT 
MILLER, FEDERAL PRAC. PROC. § 1278 (1990), at 494 (footnote and cited cases omitted). Rankin argues that there is a contrary and absolute rule in Mississippi requiring inclusion of affirmative defenses in answers. He cites Wholey v. Cal-Maine Foods, Inc.,530 So.2d 136 (Miss. 1988). In that case, the trial judge suasponte noted an affirmative defense and made it a basis for granting summary judgment. "The question thus becomes whether a trial court . . . may raise res judicata on its own motion or otherwise utilize such when the defense has not been affirmatively pled." Id. at 138. The Supreme Court said "no." How broadly to interpret the negative answer is an issue on this appeal.
 ¶ 13. A jurisprudentially-binding holding in an opinion arises from applying the controlling legal principles identified by the court to the facts of the case.
 It is important, therefore, to note what was decided in that case, and how much *Page 714 
of what was therein said was only the argument of the judge in support of the conclusion reached by the court. To determine what was decision, it is important to know what the facts averred in the pleadings and disclosed by the evidence were. The conclusion of the court upon these facts constitutes its decision, but the process of reasoning by which that conclusion was reached is not necessarily decision, and in many instances is not.
American Freehold Land Mortgage Co. v. Jefferson,69 Miss. 770, 781, 12 So. 464, 466 (1892), quoted by Justice V.A. Griffith in Castleman v. Canal Bank Trust Co., 171 Miss. 291,156 So. 648, 649 (1934). United States Supreme Court Chief Justice William Rehnquist concluded that it was "not only the result but also those portions of the opinion necessary to that result by which we are bound." Seminole Tribe of Florida v. Florida,517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).
 ¶ 14. Once dicta is identified, how a later court should weigh it was addressed by Chief Justice Sydney Smith for the Mississippi Supreme Court. He found that dicta was "not within the strict rule of stare decisis; but they do show the `views entertained by the court at that time' are `of persuasive force . . . and it should be followed unless it is found to be erroneous.'" State v. McDonald, 164 Miss. 405, 145 So. 508, 512
(1933) (Smith, C.J., concurring), quoting Sprague v. NorthernPac. Ry. Co., 122 Wis. 509, 100 N.W. 842, 843 (1904).
 ¶ 15. In summary, then, this intermediate appellate court is bound by holdings and needs to be persuaded by dicta. The facts of Wholey were that the trial judge himself injected an affirmative defense sua sponte. That created a situation in which the party opposed to summary judgment did not even know the issue was to be considered, did not address it in that party's submissions, and had a final judgment entered on that surprising basis.
 ¶ 16. What was Wholey dicta appears in the statement that "res judicata is an affirmative defense which may not be raised on motion to dismiss unless allegations of a prior pleading in the case demonstrates its existence." Id. at 139.[1] That was dicta because there was no motion to dismiss in the case that raised the defense, and the considerations that arise with a motion to dismiss, including notice to the parties and ability to respond, are much different than those actually involved inWholey. The reason dicta must persuade and does not control is that what may be unassailable as a principle regarding the facts before the Court, may be far from invincible logic when applied to other situations beyond those presently in issue.
 ¶ 17. The Supreme Court in Wholey rejected that a trial judge had discretion to notice and then rule based on an affirmative defense raised in no way by a party. Judicial discovery of a defense did not occur in our case. Not discussed in Wholey were the rules about later amendment of pleadings, about the need to interpret the rules to secure just and efficient results, and the requirement of prejudice *Page 715 
before reversible error should be found in pleading defects.Wholey was decided just six years after the Rules of Civil Procedure were adopted in order to modernize state court procedures and reduce snares and pitfalls. Wholey may have had its dicta foot standing in pre-Rules rigidity.
 ¶ 18. We conclude that such broad statements as are in Wholey
that might be seen as barring a pretrial acceptance of a defendant's raising of an affirmative defense by a motion to dismiss, to be unimportant to the decision and to constitute unpersuasive dicta. The holding that we make, which we find consistent with what had to be resolved in Wholey, is that a defendant's pretrial motion that seeks a ruling on an affirmative defense which has not been included in the pleadings, should be evaluated under the same rule as would apply if that defense was raised at trial. Under Rule 15(b), the evidence and the defense should be accepted unless the objecting party can "satisfy the court that the admission of such evidence [in support of the affirmative defense] would prejudice the maintaining of the action or defense." An amendment to the answer we find to be a redundancy, once the motion itself is found to be a proper basis for ending the suit.
 ¶ 19. We find that Rule 8(c) was no bar to the trial judge's consideration of the release.
 B. Enforcement of settlement ¶ 20. The trial judge could consider the alleged settlement, but that does not mean his consideration reached a proper result. The parties agree that this settlement never became an executed written contract. Settlements are contracts and will be enforced according to their terms. McManus v. Howard, 569 So.2d 1213,1215 (Miss. 1990). For an enforceable settlement to exist, there must have been a meeting of the minds. Hastings v. Guillot,825 So.2d 20, 23 (Miss. 2002). The party claiming that a binding settlement is in force must demonstrate by a preponderance of the evidence that there was a meeting of the minds. Id.
 ¶ 21. What Rankin himself concedes is that he agreed to release Broadhead. No executed settlement agreement of even that much exists, but Rankin's attorney acknowledges that his client agreed to drop all claims against that individual. The minds met on that, and even in the absence of an executed settlement agreement the release of Broadhead was binding.
 ¶ 22. Thus, the dispute solely concerns whether the settlement also prohibited bringing any action against the dealership for which both men worked. Two affidavits were introduced. This is the affidavit submitted by Clements Cadillac, prepared by Broadhead's attorney, Christopher Klotz:
 I worked with Broadhead and Rankin's attorney, Sanford Knott, Esq., and reached an agreement to settle all criminal and potential civil liability against each other by agreeing that each party would release each other from any and all civil liability if both parties dropped their criminal charges against each other.
 In reliance upon the Settlement Agreement reached with Sanford Knott that each party would dismiss the criminal affidavits and each party would sign a release of any and all liability, including civil liability, Broadhead signed a Waiver of Civil Liability Release. . . .
 On the day of Mr. Broadhead's and Mr. Rankin's criminal trial, Mr. Knott stated that his client had agreed to release Mr. Broadhead from any and all liability and that Mr. Rankin would sign *Page 716 
the document soon after the charges were dropped. Mr. Knott represented that Mr. Rankin had been physically unavailable recently to actually sign the document, but had told Mr. Knott that he would sign the document fully releasing Mr. Broadhead at his earliest convenience.
 ¶ 23. The release document entitled "waiver of civil liability" is also in the record. It stated that both parties released the other and Clements Cadillac from civil liability. That release was signed by Broadhead and his attorney, Klotz. Neither Rankin nor his counsel signed.
 ¶ 24. Rankin prepared his own affidavit in an attempt to block the granting of the motion to enforce the settlement. It never addressed any of the facts in the Klotz affidavit.
 ¶ 25. To determine whether judgment should have been granted to the dealership based on this evidence, we first note that the parties' presentation and the judge's consideration of the two affidavits transformed this motion into one for summary judgment. M.R.C.P. 12(b). The issue was a narrow one, being simply whether a binding settlement had been entered. The parties cannot rely on their pleadings, but must raise through affidavits or other evidence any facts that they believe are material to a resolution of the issues presented to the trial court. M.R.C.P. 56(e).
 ¶ 26. The Klotz affidavit submitted for Clements Cadillac was never disputed. It was a sworn statement not only that the parties had agreed to drop their criminal charges and to release each other from civil liability, but they also agreed to execute the document that was attached to the affidavit. The Klotz affidavit refers to the exhibit, which released the individuals and also Clements Cadillac, and then swore that Rankin's attorney said on the day of the scheduled criminal trials on the assaults, that Rankin "would sign the document soon after the charges were dropped." None of this was disputed by Rankin in the affidavit that he executed a month later.
 ¶ 27. The only evidence before the trial judge was that at the time that the criminal charges were dropped, Rankin had agreed to sign a release of Broadhead and Clements Cadillac from all civil liability. The judge granted a judgment enforcing that agreement. We find no error and affirm.
 ¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY ISAFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THEAPPELLANT.
KING, C.J., LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, P.J.
[1] Relied upon was Livingston v. Spires, 481 So.2d 87
(Fla.App. 1 Dist. 1986). The court said that when "considering appellee's motion to dismiss, the trial court was required to confine itself to the allegations contained within the four corners of appellant's complaint. Since appellant's complaint did not mention the prior final judgment of dissolution, the complaint does not `affirmatively and clearly' show the conclusive applicability' of res judicata to bar this action."Id. at 88. In Mississippi, when matters outside the pleadings are raised on a motion to dismiss, that motion is transformed into one for summary judgment. M.R.C.P. 12(b).