E. C. WARMACK *v.* L. M. BOYD, ADMINISTRATOR, ET AL., AND L. M. BOYD, ADMINISTRATOR, ET AL. *v.* E. C. WARMACK.

USURY. *Non-usurious note. Affected by subsequent usurious contract.*

> In 1878 T. gave B. his promissory note for a considerable sum of money. In 1880 a statute was enacted which provided that "if a greater rate of interest than ten per cent. per annum shall be stipulated for in any case, all interest shall be forfeited." On the 6th of April, 1881, T. gave B. his promissory note for an amount equal to the interest on the first note computed up to the day last mentioned at twenty per cent. per annum. *Held*, that the usurious contract contained in the note last given destroyed the interest-bearing quality of the first note, and it yielded no interest after the date of such contract.

APPEAL and CROSS-APPEAL from the Chancery Court of Yazoo County.

HON. E. G. PEYTON, Chancellor.

On the 22d of January, 1872, Richard Boyd loaned J. R. Tucker two thousand dollars, and the latter executed his note therefor in favor of the former for two thousand three hundred and fifty dol-

lars, payable twelve months after date, the interest being included in the face of the note.   On the 15th of February, 1873, Tucker drew a draft on one John Champlin for three hundred and ninety-three dollars in favor of Boyd, three hundred and fifty dollars of which was in payment of interest on the note.   On the 10th of February, 1874, this original note for two thousand three hundred and fifty dollars, and another note for three hundred and fifty dollars, given for interest then due, were taken up and cancelled, and a new note for two thousand seven hundred dollars executed in their stead.   This new note was to bear interest at the rate of twenty per cent. per annum.   On the 22d of February, 1878, Boyd loaned Tucker three thousand dollars more, and took Tucker's note for eight thousand eight hundred· and thirty-eight dollars, due twelve months from its date, which included the amount so loaned and the amount due on the two thousand seven hundred dollar note previously given, with the accrued interest thereon at twenty per cent. per annum up to the date of this last note, and also interest on the amount until its maturity.   This last note on its face was to bear interest at the rate of ten per cent. per annum from maturity.   This note was secured by a deed of trust on certain lands belonging to Tucker.   On the 18th of December, 1879, Tucker made a payment on this note of seven hundred dollars.   On the 6th of April, 1881, Tucker executed his note in favor of Boyd for nine hundred and eighty-nine dollars and thirty-six cents, which, in the language of Tucker, "was given for the excess of interest not expressed in the note for eight thousand eight hundred and thirty-eight dollars, which on its face only called for ten per cent. per annum, when it really bore twenty per cent. interest."   It was admitted that this last note was given for usurious interest.   On the 28th of February, 1883, the lands were sold under the above-mentioned deed of trust and were bought in by Boyd for ten thousand and fifty dollars. The sale was conducted in accordance with the provisions of the deed of trust.   The lands, which consisted of ten hundred and eighty acres, were sold in bulk, and not in tracts of one hundred and sixty acres.   But there was no objection made by any one at the time of the sale to the manner of the sale.   Evidence was adduced

on the hearing to the effect that the land would have brought more had it been sold in one hundred and sixty acre tracts. William Warmack, the husband of Mrs. E. C. Warmack, whose interest in the matter will be explained hereafter, was present at the sale and made a bid of ten thousand dollars for the land. Warmack testified that he would have bid more, but before the sale he had been told by Boyd that Tucker owed him, Boyd, eighteen thousand dollars. There was evidence which tended to show that the land was worth more than Boyd gave for it.

On the 30th of May, 1881, Tucker executed another deed of trust upon the same lands to John Warmack, as trustee, to secure the payment of a debt of four thousand and thirty-two dollars and ninety-one cents, which the grantor owed Emma C. Warmack, and which became due on the 1st of January, 1882. On the 12th of March, 1883, the lands were again sold under this second deed of trust, and bought in by Mrs. E. C. Warmack. On the 28th of January, 1885, Mrs. Warmack filed a bill against Boyd & Tucker, alleging that a large part of the debt of Tucker to Boyd was usurious, and also that the sale as made was void. The prayer of the bill was that the sale be declared void, or that the debt of Tucker to Boyd be purged of all usurious interest, and that Boyd be required to pay her the amount he may have received from Tucker in excess of his legal demand. During the progress of this cause Richard Boyd died, and the cause was revived against L. M. Boyd, the administrator of his estate, and his several heirs.

The Chancellor on the final hearing refused to set aside the sale, but entered up a decree in favor of complainant for seven hundred and fifty-nine dollars and fifty-four cents.

The court referred the matter to a commissioner to purge the debt to Boyd of all usury, and to make a statement of the amount of excess over legal demands Boyd had received from Tucker. The order of reference was as follows : " The master will compute interest on two thousand dollars, at ten per cent. per annum, from the 22d of January, 1872, to the 10th of February, 1874. The interest thus ascertained will be added to the principal, and three

hundred and fifty dollars deducted from the same. The balance will constitute a new principal, on which the master will compute interest at the rate of twenty per cent. per annum from the 10th of February, 1874, to the 22d of February, 1878. The principal and interest will be added together as before, and, with the three thousand dollars advanced by Richard Boyd to J. R. Tucker on that day added to the same, he will have a new principal, on which he will compute interest at the rate of ten per cent. per annum from the 22d of February, 1878, to the day of sale, the 28th of February, 1883. In his calculation he will allow the credit of seven hundred dollars paid on the 18th of December, 1879. Whatever is ascertained to be due on the 28th of February, 1883, will be deducted from the amount of Boyd's bid at the sale, ten thousand and fifty dollars, and the balance will be decreed to complainant, and a charge fastened upon the land in controversy for its payment." The complainant and the defendants both appealed.

*Bowman & Bowman*, for the appellant and cross-appellee.

The instructions of the court, and the report of the commissioner made in pursuance of them, are contrary to the rule laid down in Revised Code, 1880, § 1144; *Brooks* v. *Johnson*, 54 Miss. 272.

The Code of 1871, § 2270, provides that if a greater rate of interest than ten per cent. shall be stipulated for in any case, such excess shall be forfeited. This provision must be taken in connection with the immediately previous sentence or clause of the section, which requires the contract or stipulation to be in writing. No rate of interest, as will be seen by the note, was stipulated or agreed on in the note. Boyd had, or caused to have done, the usurious sum of three hundred and fifty dollars added to the face of the note, but that was no contract for payment of more than ten per cent. after its maturity. It was simply a cunning scheme to cover up his violation of the law. We think, taking the most favorable view in favor of Boyd, he was entitled to only six per cent. on balance of one thousand eight hundred and fifty-three dollars and eighty cents, which was the amount, adding ten per

cent. to the two thousand dollars, and deducting the three hundred and fifty dollars on 29th of January, 1873.

The legislature by act 12th March, 1873, Sheet Acts, p. 81, enacted that any rate of interest agreed on by contracting parties may be collected. This act was repealed February 26, 1875. Act, p. 219.

The two thousand seven hundred dollar note had its origin in usury, which at the time of the moving of the consideration was prohibited by law. In other words, it was no new contract, but an old contract, illegal in its inception and execution.

The rule is that whenever any contract is void either by a positive law, or upon principles of public policy, it is deemed incapable of confirmation upon the maxim *quod ab initio non valet, in tractu temporis non convalescit.* 1 Stor. Eq. Jur., § 306 ; 1 Stor. Contracts, § 602 ; *Cole* v. *Gibson,* 1 Ves. 507 ; *Chesterfield* v. *Janssen,* 2 Ves. 125.

So also if a new security be taken or a new contract be made to pay a debt or perform a contract which is usurious in its origin as between the original parties such new security or contract is void. *Terry et al.* v. *Grant,* 10 S. & M. 95 ; *Coulter* v. *Robertson,* 10 S. & M. 18 ; *Warner* v. *Crabtree,* 1 Greenleaf Rep. 153 mar. p. 167 ; Stor. Prom. Notes, § 193 ; 1 Stor. on Contracts, § 603 ; 2 Parsons on Notes and Bills 217-2, note 420.

The consideration of the note for eight thousand eight hundred and thirty-eight dollars was the note of two thousand seven hundred dollars dated February 10, 1874, with twenty per cent. interest per annum, and three thousand dollars loaned by Boyd on 22d February, 1878, with twenty per cent. interest added to date of its maturity, which was twelve months after date.

The land, containing over one thousand acres, was sold in a body. If sold in less quantities it would have brought more money. There was one hundred and sixty acres adjoining Warmack, for which he would have paid almost as much as the entire tract brought.

The trustee should be the representative of both parties, and should have sold the land in such a way as to realize the largest sum.

The appellant, we think, has proven fraud in the sale, and has suffered damages by it, as she is required by the rule in *Harris* v. *Ransom*, 24 Miss. 508.

Even judicial proceedings can be attacked and set aside for fraud. *Christian* v. *O'Neal*, 46 Miss. 669. *Thompson* v. *Berry*, 3 John Ch. Rep. 398 ; *Fanning* v. *Dunham*, 5 John Ch. Rep. 122.

A sale may be set aside or the biddings opened for fraud, un-. fairness, or irregularity. 2 Hill. on Mort. 200, § 31.

The case at bar is analogous, and should be determined by that of *Jackson ex. dem.* v. *Dominick*, 14 Johns. Rep. 435.

*D. R. Barnett*, for the appellees and cross-appellants.

1. The court below properly denied a resale of the land. The case of *Jackson* v. *Dominick*, 14 Johns. 435, relied on by counsel for appellant, is not applicable.

Under the statutes of New York a debt tainted with usury was void and uncollectable. Necessarily, a sale of property given as security for such debt would pass no title. There being no debt, there was nothing for which the property could be sold. The sale in this case was made under a contract entered into in 1878. The law, as it then stood, only denied a recovery of that part of the interest which was usurious. If the property brought more than the debt and legal interest, the surplus was liable in the hands of the trustee or any one else who might hold it, either to the debtor or a junior incumbrancer. The mere fact that the debt was tainted with usury would not affect the sale. It would be like a sale for a debt wholly valid in law, where the property brought more than the debt. Any other construction would deny any remedy to the creditor on the security given him for that part of the debt which was legally due. This court has practically decided this question. *Matlock* v. *Cobb*, 62 Miss. 45.

2. Moreover, the appellant should have enjoined the sale. She was aware that the debt was tainted with usury at the time the sale was made, but made no objections to it. No objection having been made to the sale, Boyd treated the land as his own. He did not work or rent it at all for the year 1883, but appellant insists now that he should credit his debt with what ought to have been

the annual rental value of the property, and that the property be resold. This is asking the courts to perpetrate a fraud. "Courts of equity will refuse relief to one who, having a right, neglects to assert it until its assertion would be a surprise upon the defendant, and involve him in a litigation in reference to a matter which he, by the conduct of the plaintiff, had been led to believe had been abandoned." *Helem* v. *Yerger*, 62 Miss. 51.

3. It is further insisted that the sale should be set aside because the trustee did not sell the property in subdivisions, but as a whole. There is no constitutional or statutory requirement on a trustee to sell in parcels. A trustee must, however, sell the property to the best advantage, and if this can be done by a sale in parcels he should so sell. But the evidence shows that the property sold well, better than is usually the case where property is forced on the market. The witnesses who testify that they would have been bidders if the property had been sold in parcels are entitled to no credit, because they were not present at the sale, and until that time it was not known how the trustee would sell the property, in parcels or as a whole. They never notified the trustee they would like to purchase. The husband of the appellant was present, bid ten thousand dollars, and stopped. He admits that he was the appellant's agent, that he knew the debt for which the property was being sold was tainted with usury, and that he made no demand on the trustee for a sale by parcels. There can be no question that the conduct of the trustee was above suspicion, and that he acted in such manner as to conserve the interests of all parties.

4. The court below erred in divesting the note executed in 1874 of what had been previously usury. In 1873 the usury law was repealed; the note executed in 1874 was a novation of a debt tainted with usury, created in 1872. By the note of 1874, the debtor, Tucker, got an extension for one year, and at that time there was no law against usury. *Flight* v. *Reed*, 1 H. & C. 703. In *Ewell* v. *Doggs*, 108 U. S. Rep. 143, the Supreme Court of the United States passed directly on the question here raised, and held that the debtor, where the usury law had been repealed, could not

plead the usury. Moreover, the extension for one year was a new consideration.

CAMPBELL, J., delivered the opinion of the court.

The court properly refused to set aside the sale.

Interest at ten per cent. should be calculated on two thousand dollars from the 22d of January, 1872, to the date of the payment, 15th of February, 1873, and ten per cent. on balance to 10th of February, 1874, and after that at twenty per cent. to the date of the note given in 1878, and on the amount of the new note given in 1878 to the date of payment of seven hundred dollars on 18th of December, 1879, at ten per cent., and from that date at ten per cent. to the 6th of April, 1881, when the usurious contract was made whereby the interest-bearing quality of the note was destroyed, and after which it bore no interest. *Rozelle* v. *Dickerson*, just decided.

*Decree reversed, and decree here in accordance with this opinion, for which purpose the case is referred to the clerk of this court to compute and report amount due.*