M. E. ROZELLE ET AL. *v.* W. H. DICKERSON ET AL.

1. MARRIED WOMAN. *Mortgage of land for husband's debt, under Code* 1871. *Consideration for new mortgage, under Code* 1880.

In March, 1880, R., a married woman, mortgaged her separate estate to secure a debt due by her husband. After the adoption of the Code of 1880, which gave a married woman the power to bind her separate estate, R. executed a new mortgage, which was accepted in satisfaction of the old one, and which gave to R. an extension of time for payment of the debt. *Held*, that as the legal effect of the first mortgage, under the Code of 1871, was to bind the rents and profits of R.'s estate, this liability was a sufficient consideration to support the new mortgage, by which the whole of her estate became liable.

2. USURY. *Stipulation for. Effect on contract. New agreement for legal interest. Section* 1141, *Code of* 1880, *applied.*

Any stipulation for a greater rate of interest than ten per cent. per annum, whenever and however made, whether oral or written, brings the contract with which it is connected within the statute (§ 1141, Code of 1880) against usury, and works a forfeiture of all interest growing out of the contract thereby infected, not only for the time for which usurious interest is stipulated, but until a new agreement for legal interest is made.

3. SAME. *Contract for specified time. Effect thereafter.*

Under § 1141, Code of 1880, which provides that if a greater rate of interest on money than ten per cent. per annum "be stipulated for, all interest shall be forfeited," a contract to pay usurious interest on a promissory note for one year after its maturity works a forfeiture of interest accruing on the note as well after as during such year, in the absence of a subsequent express agreement for a legal rate of interest.

APPEAL from the Chancery Court of Coahoma County.

HON. W. G. PHELPS, Chancellor.

In March, 1880, Mrs. E. D. Rozelle and her husband, A. B. Rozelle, executed their promissory note for seven thousand and eighty dollars, with interest at ten per cent. per annum, payable twelve months after date, in favor of P. C. Dickerson & Son. This note was secured by a mortgage on certain lands, the property of Mrs. Rozelle. On March 2, 1882, this note was replaced by another note, signed by and payable to the same parties, for eleven thousand and forty-eight dollars and twenty-five cents, due twelve months after date, with interest at ten per cent, which latter note also included some other loans from the Dickersons to the Rozelles, and was secured by a mortgage on the same property. Mrs. E. D. Rozelle died in 1884, leaving two minor children, Magnus E. and Addie M. Rozelle. In 1885 P. C. Dickerson died, leaving W. H. and M. A. T. Dickerson, his executors. These latter were about to foreclose the mortgage given to secure the last note, when A. B. Rozelle and the two minor children of Mrs. Rozelle filed a bill to enjoin the sale of the land under the mortgage, because the note included in its face a large amount of usurious interest, and because it was by oral agreement to bear interest at the rate of twelve and one-half per cent. per annum after maturity, and because Mrs. Rozelle could not contract so as to bind her separate property when the first note was given. A temporary injunction was granted.

The Chancellor, in his decree, found the following facts, to wit: That the note for eleven thousand and forty-eight dollars and twenty-five cents was given for the note of seven thousand and eighty dollars, for two thousand two hundred and forty-three dollars and forty-six cents cash advanced, and for thirty-nine dollars and fifty cents incurred in traveling expenses, as per agree-

ment between the parties, amounting in the aggregate to nine thousand three hundred and sixty-two dollars and ninety cents, together with interest on this aggregate from March, 1882, to March, 1883, at eighteen per cent. per annum ; that the note for seven thousand and eighty dollars was given for six thousand dollars lent by Dickerson to the Rozelles, and interest on that amount at eighteen per cent. from March, 1880, to March, 1881 ; that the note for eleven thousand and forty-eight dollars and twenty-five cents was by special agreement between the parties to bear interest at the rate of twelve and one-half per cent. per annum for one year after its maturity, that is, from the 2d of March, 1883, to the 2d of March, 1884, notwithstanding the rate of ten per cent. named on its face, but that there was no agreement that more than ten per cent. interest should be charged or paid on the note after the 2d of March, 1884.

The Chancellor ordered the cause to be referred to the clerk to compute the interest, and directed him to compute interest on six thousand dollars at ten per cent, from March 2, 1880, to March 2, 1881, to add the result to the six thousand dollars, and to this sum add two thousand two hundred and forty-three dollars and forty cents as the second amount advanced, and thirty-nine dollars and fifty cents, traveling expenses, and on this result to compute interest from March 2, 1884, to the date of the decree, to wit, November 25, 1885, at ten per cent.   The decree was entered up for ten thousand four hundred and ten dollars and twenty cents as the amount still due on the eleven thousand and forty-eight dollars and twenty-five cent note.

At the time this note was given it seems that there was an agreement between the parties that the Dickersons should establish a saw-mill, and that the Rozelles should furnish them with sawlogs, and that the proceeds of the logs should be credited on the note. The bill sets out that logs were cut and rafted down at considerable expense by the Rozelles, but that no saw-mill was ever built by the Dickersons, and no sum ever credited on the notes for the logs so rafted down, and asks the court to set off the damages for this violation of such agreement against the sum due on the note.

The Chancellor sustained a demurrer to this part of the bill, dissolved the injunction, and ordered the land to be sold to pay the amount due the defendants under the decree of the court. The complainants appealed.

*George Winston,* for the appellants.

1. The note for seven thousand and eighty dollars was a nullity as to Mrs. E. D. Rozelle, and being void could furnish no valid consideration for the note for eleven thousand and forty-eight dollars and twenty-five cents, so as to make it binding as to such consideration either upon her personally or upon the corpus of her estate in her lifetime or upon its income after her death. *Porterfield* v. *Butler,* 47 Miss. 165 ; *Viser* v. *Scruggs,* 49 Miss. 705 ; *Hendricks* v. *Robinson & Stevens,* 56 Miss. 694 ; *Reed* v. *Coleman,* 51 Miss. 835.

Representations as to the use of the money do not validate the promise of a married woman to pay it. *Viser* v. *Scruggs,* 49 Miss. 705; *Wright* v. *Wotten,* 56 Ib. 1; *Harmon* v. *Magee,* 57 Miss. 410.

2. It was error in the court to allow interest for one year at ten per cent. on the six thousand dollars. While the penalty for usury at the time this money was lent was a forfeiture only of the excess above the legal rate, at the date of the execution of the note for eleven thousand and forty-eight dollars and twenty-five cents (March 2, 1882), the penalty was the loss of the whole interest, and at that time P. C. Dickerson, the payee (the usurious interest not being paid) made a new contract with the makers, whereby they not only agreed to pay the six thousand dollars and interest at eighteen per cent. for one year (the amount of the note for seven thousand and eighty dollars), but agreed to pay eighteen per cent. on the principal and former interest, *i. e.,* on the amount of seven thousand and eighty dollars. This new contract was made by taking the note for eleven thousand and forty-eight dollars and twenty-five cents, and including therein said note for seven thousand and eighty dollars and interest at eighteen per cent.

The allowance of interest from the 2d of March, 1884, was improper.

When usury is added to the principal debt for one year and the contract provides only for the legal rate after maturity, it is but

one contract for the reservation of usurious interest and is vicious in all its parts, no matter in what mode the interest is expressed to be paid. *Wilday* v. *Morrison,* 66 Ill. 532.

3. The fact that the damages on the contract, which was connected with the notes, was unliquidated did not affect the right to the defense of recoupement.

*Nugent & McWillie,* on the same side.

We insist that the new contract wholly displaced the old contract as to the rate of interest and is the only contract between the parties on that subject, and being governed by the present law, there was no authority for the action of the court in allowing ten per cent. interest on the six thousand dollars since March 2, 1884. That interest could only be allowed on the theory that the original contract between the parties in respect to interest was still in force, but the fact is that that contract has been displaced and superseded by a new one changing the rate of usury.

The evidence showed beyond question and the decree recites as an ascertained fact " *that notwithstanding said note for eleven thousand and forty-eight dollars and twenty-five cents bore interest on its face at ten per cent. after maturity, it was the agreement of the parties at the time of its execution that it should bear interest after maturity at twelve and one-half per cent., and that the difference between the interest which said note bore on its face and the interest really agreed to be paid is two and one-half per cent.*" In other words, the court held that because it was not affirmatively shown that the usurious rate of interest agreed on when the contract was entered into was not in some way recognized afresh by the payee, he was not to be looked on as agreeing to that rate of interest beyond the two first years, when it is affirmatively shown that he did exact it, and that he ought to be, therefore, allowed ten per cent. for the third and all succeeding years. This was a strange conclusion in view of the decisions of this court to the effect that no matter how the usurious transaction is covered up, or what form it is made to assume by the devices of the parties, whenever it is discovered it is subject to the penalty of the statute. The usury in the rate of interest for one year carried into the face of the note as principal forfeits the in-

terest for all subsequent years, and, too, the interest is forfeited, no matter at what rate expressed in the note, if the note was originally given dollar for dollar for stocks or bonds then greatly depreciated to the knowledge of the parties. In other words, whenever any more money than that actually lent and ten per cent. interest is required to be paid by one who is a mere lender from one who is a mere borrower, the transaction is usurious and the interest is all forfeited. *Archer* v. *Putnam,* 12 S. & M. 286; *Torrey* v. *Grant,* 10 S. & M. 89; *Brown* v. *Nevitt,* 27 Miss. 802; *Hyde* v. *Finley,* 26 Miss. 468; *Coulter* v. *Robertson,* 14 S. & M. 18.

*D. A. Scott,* for the appellees.

1. Did the transaction of 1882 impose a personal obligation on Mrs. Rozelle? We admit, without argument, that prior to the execution of said note and trust-deed in March, 1882, there was no personal liability on her, and the case of *Porterfield* v. *Butler,* 47 Miss. 165, so much relied on by counsel for appellants in the court below, settles the point that the pre-existent void note of a *femme covert* is not a sufficient consideration for the execution of a subsequent note by her, even though the note is given after her coverture is removed.

It is altogether useless to antagonize or criticise this case, for it simply does not touch the question before the court in this litigation.

But the consideration for the note executed by Mrs. Rozelle in March, 1882, was this: Her separate property was then incumbered by mortgage to secure her husband's debt (or a debt which she was not authorized under the statute of 1871 to contract) and liable to be immediately taken from her, placed in the hands of a receiver, and by him farmed out until that debt was paid, or until her death. Under these circumstances, she being then freed from the disabilities of coverture, an arrangement was made whereby her then creditor (appellee's testator), by extending time for the payment of the old debt, taking a new note, surrendering the old one (on which she was not personally liable) and the old mortgage (on which her separate estate was liable to immediate seizure), advancing a further sum of money to discharge a valid incum-

brance on her said separate property, gave to the transaction *both* the elements *either* of which constitutes value. 1st. Detriment to him (the creditor) in that he tied his hands against A. B. Rozelle and the income of her (Mrs. Rozelle's) separate property. 2d. Advantage to Mrs. R. in that the income of her said property was released from immediate seizure.

2. The appellees were entitled to interest on the sum originally advanced (six thousand dollars) as directed in the order of reference, for this loan was made previous to the enactment of the Code of 1880, under which all interest is forfeited if a greater rate than ten per cent. is stipulated for. The note bears interest upon its face at ten per cent. per annum from March 2, 1882, until paid, and the trust-deed securing it contains a like recital, the introduction of which made out a *prima facie* case in favor of appellees, to rebut which appellants introduced a mass of testimony, most of which was wholly incompetent and the remainder vague and uncertain.

COOPER, C. J., delivered the opinion of the court.

It is unnecessary to pass upon the correctness of the action of the court below upon the numerous exceptions taken to the testimony, since it is manifest that the facts found by the Chancellor are established by the evidence in the record, and in any view of the case must determine the respective rights of the parties and control the decision.

The contention by the appellants that the mortgage cannot be enforced for any part of the debt existing prior to the adoption of the Code of 1880, because Mrs. Rozelle, being a married woman, was under no liability to pay it, and that for this reason it cannot form a sufficient consideration for a new promise, made after the adoption of the code, is not maintainable. It is true that the note of March 2, 1880, was not enforceable against her personally, but it was the debt of her husband, at least, and the mortgage executed by her to secure its payment bound the rents and profits of her estate mortgaged, and this liability of her estate was sufficient to support the new arrangement entered into on March 2, 1882, at which time she was relieved of all disability of coverture.

By including in the note interest at the rate of ten per cent., the payee " stipulated " for a greater rate than was permitted by law, and the consequence declared is a forfeiture of all interest. As we have heretofore held, any stipulation, however and whenever made, whether evidenced by a writing or proved by oral evidence, infects the contract to which it refers and brings it within the condemnation of the statute, by the terms of which it is converted into a fruitless and unprofitable transaction. The purpose of the statute is to discourage exorbitance, and this it does by declaring a forfeiture of " all interest " " in any case " in which a greater rate than ten per cent. is stipulated for. The forfeiture is not of all interest for the time during which the unlawful rate is stipulated for, but it extends throughout, is co-extensive with the contract of which it is originally or is subsequently made a part, and unless a new and express agreement is made for future legal interest, none can be thereafter collected.

It was, therefore, error to allow interest after the expiration of the time for which, by express agreement, usury was reserved ; no interest should have been permitted after the making of the unlawful contract. For this error the decree will be reversed and a proper decree made here. The decree sustaining the demurrer to so much of the bill as sought to recoup against the note unliquidated damages for the breach of an independent contract was manifestly right.

*Decree reversed.*