## WILLIAM PURVIS v. WILLIAM WOODWARD, ADMINISTRATOR.

1. CHANCERY PLEADING AND PRACTICE. *Code* 1892, ⸮ 535. *Answer. Evidence. Two witnesses, etc.*

   The rule requiring two witnesses, or one witness and corroborating circumstances, to overthrow a sworn answer denying the allegations of the bill (aside from the statute modifying it, code 1892, ⸮ 535) has no application where the answer is sworn to by one who has no personal knowledge of the facts.

2. SAME. *Injunction. Code* 1892, § 557.

   Code 1892, ⸮ 557, providing that an injunction shall not be granted unless the judge shall be satisfied of the complainant's equity by oath or other means, does not require that the bill shall in all cases be sworn to before issuance of an injunction.

3. SAME. *Accounting. Tender.*

   In a suit for an injunction, where an accounting is necessary to determine the sum due from the complainant to the defendant, the only tender required is of the amount which the complainant in good faith admits to be due, with an offer in the bill to pay whatever sum shall be ascertained to be due.

4. USURY. *Renewal note. Change of law.*

   A promissory note given in renewal of another is a new contract, and is governed by the usury law in force at its date, although the law has been changed since the execution of the first one.

5. SAME. *Code* 1880, ⸮ 1141.

   The provisions of code 1880, § 1141, on the subject of interest and usury, were prospective only, but they nevertheless applied to a promissory note given while they were in force in renewal of an older one executed before the adoption of that code.

6. SAME. *Injunction. Sales under trust deeds. Code* 1880, ⸮ 1141. *Code* 1892, ⸮ 2348.

   Under the provisions of the code 1880, ⸮ 1141, and code 1892, ⸮ 2348, on the subject of interest and usury, where sales under deeds of trust are enjoined, the creditor can, the contract being usurious, recover only the principal of his debt.

7. SAME.   *Usurious debt.   Payment.   Tender.*

In order to enjoin a sale under a deed of trust, given to secure an usurious debt, it is unnecessary for the complainant to have paid or tendered more than the principal of the debt, since under the statute (code 1880, § 1141, code.1892, § 2348) he could recover back all interest paid.

FROM the chancery court of Lafayette county.

HON. JAMES C. LONGSTREET, Chancellor.

Purvis, the appellant, was the complainant in the court below; Woodward, administrator, the appellee, was defendant there. The object of the suit was to enjoin a sale of lands under a deed of trust, the claim being that the debt was usurious, and that the principal thereof had been paid. The debt was contracted November 21, 1877. The note given at that time was payable twelve months after its date. It included, as if it were principal, eighteen per centum interest for one year, and stipulated for ten per centum interest per annum on the whole amount after its maturity. The note was renewed in November, 1878, interest at fifteen per centum being carried into the principal for one year, and it was again so renewed in November, 1879, at which time the $140, mentioned in the opinion, was credited on the debt. After several small payments, there was another renewal on March 16, 1885, the note then given providing not only for interest, but including, as well, a ten per centum attorney's fee clause. Again, several small payments were made, and thereafter, on May 20, 1891, a fourth renewal note was executed, and, after same course of procedure, still another, the last, renewal note was made, November 10, 1897. The court below adjudged the debt usurious, but, applying the provisions of the code of 1871, § 2279, allowed the creditor ten per centum interest per annum on the money actually loaned, and decreed accordingly. Both parties appealed to the supreme court.

*Mayes & Harris*, for appellant and cross appellee.

It is perfectly manifest that, starting out with a usury

drawing principal, and each successive note calling for the full legal rate of ten per centum per annum, based on that usurious principal, the taint of usury is preserved in every note. The real question in the case is as to the effect of the enactment of the code of 1880, which changed the penalty from a forfeiture of the excess over ten per centum to a forfeiture of all interest whatever. We concede that the code of 1880 could not be and was not intended to be retroactive. It did not affect the note executed in 1879, which was outstanding and drawing usurious interest at the time when the code of 1880 was enacted. But after the code of 1880 became operative, when, in the year 1885, the holder of that usurious note, instead of collecting his debt and enforcing his contract as made, altered the same, extended the debt, took a new note, which new note was for a new interest-drawing principal, observe, and a new interest-drawing principal larger than the old note, and included, moreover, a ten per centum attorney's clause, which had not appeared before; doing all these things, his liability as a usurer was fixed under the code of 1880, and from 1885 his note drew no interest whatever, and all payments subsequently made must be imputed as payments on principal. *Bank* v. *Fraser*, 63 Miss., 231; *Warmack* v. *Boyd*, 63 Miss., 488; *Rozelle* v. *Dickerson*, 63 Miss., 538.

The court will observe that this is not a question of a renewal of a loan originally untainted and innocent. The creditor in this case never saw the day when he had a debt that was countenanced by the law. The whole transaction originated in defiance of the law, and when, under such circumstances, he undertakes to renew his note and make what is essentially a new contract, such renewal and such new contract must be subject to the existing laws.

The rule that more than the testimony of one witness is needed to overturn a sworn answer does not apply in a case like this, where the answer is manifestly sworn to by a party who knows nothing of the transaction, and does not profess to

have any personal knowledge of it.    An answer sworn to, in order to cause the rule to apply, must be sworn to by one who swears as a witness.    It is taken for his testimony.    The rule originated in a period when the parties to transactions were not competent to testify.    The reason why a bill sworn to by attorneys is not received as an offset to a sworn answer is because the attorney has no personal knowledge.    Manifestly, the answer must be sworn to, in order that the rule shall apply, by one who has personal knowledge.

Under the statute of this state an injunction bill is not required to be sworn to.    The chancellor is allowed to issue his fiat, if he is satisfied of the truth of the allegations of the bill, "by oath or other means."    If he is satisfied, it is his affair what are the means by which that mental condition is reached. It is a matter addressed to his discretion.

Much was said about complainant's not doing equity by tendering what was really due.    So far as the technical argument is concerned as to what constitutes a tender, the answer is that a technical tender is not needed.    It is doubtful if our court would now hold that in a case like this any tender is necessary, certainly not a technical one.    Such a tender is only necessary when it is offered as a reason why interest and court costs should not be allowed.    It is not needed in a usury case to stop interest. Usurious loans never draw interest any way.    The rule that the complainant must do equity is fulfilled if the complainant in good faith offers to pay what he admits to be due; and that such an offer was made in this case is virtually admitted in the answer itself.

*Kimbrough & Kimbrough*, for appellee and cross appellant.

The bill for the injunction is sworn to by attorney only, and that oath of the attorney is only on information and belief.    Neither was the bill supported by any sworn or duly certified exhibit whatever.    In a word, it was a naked bill, supported solely by the oath of an attorney, and on in-

formation and belief merely. We respectfully submit that this is not sufficient upon which to either grant or maintain an injunction.

The bill must be sworn to positively, and not on information and belief only. . 2 High on Injunctions, secs. 1581, 1567, 1569; *Campbell* v. *Morrison*, 7 Paige, 160; *Bank of Orleans* v. *Skinner*, 9 Paige, 307; 2 Daniels Ch. Plead., 1669; *Waller* v. *Shannon*, 53 Miss., 501; *Jacks* v. *Bridewell*, 51 Miss., 882.

The allegations of the bill as to tender are insufficient to justify injunction had they been properly sustained, and the proof on the subject of tender shows that the bill should have been dismissed. Smith on Personal Property, 199; Lawson on Contracts, sec. 417; 2 Parsons on Contracts, sec. 648; 2 Bouvier Law Dic., 582; Parsons on Notes and Bills, 624; *Sheredine* v. *Gaul*, 2 Dallas, 140; *United States* v. *Owens*, 2 Pet., 527; *Edgerton* v. *McRea*, 5 How. (Miss.), 186; *Emmons* v. *Myers*, 7 How. (Miss.), 375; *Guion* v. *Doherty*, 43 Miss., 550; *Savings Inst.* v. *Buchanan*, 60 Miss., 496; *Warmack* v. *Boyd*, 63 Miss., 488; 1 Pom. Eq. Jur., secs. 391, 937; 1 Story Eq. Jur. (10th ed.), secs. 301, 64*e*; 2 Jones on Mortgages, sec. 1806; 1 High on Injunctions, sec. 447; Bish. Prin. Eq., 318; *Deans* v. *Robinson*, 64 Miss., 198; *Mortgage Co.* v. *Jefferson*, 69 Miss., 770.

The bill should have been dismissed and the injunction dissolved absolutely because of the long delay and circumstances of death that appear in the bill and proof. The usurious transaction occurred, if ever, in 1877 and 1878. No whisper of complaint was ever heard till Goolsby died some twenty years later, and all of the other parties had died who saw or had personal knowledge of a single transaction of the numerous ones recounted, except the complainant in the bill and his sons and sons-in-law. Laches need not be pleaded. 13 Enc. Plead. & Prac., 183; *Sullivan* v. *Portland, etc., R. R. Co.*, 94 U. S., 806.

Our contention on the facts is that both parties meant to

abandon the usurious practice and eliminate it, and did so, and that there was no usury in the note of 1879 or any subsequent one. Usury laws are in derogation of the common law, and are to be strictly construed in every way in favor of the defendant. Norton on Bills and Notes, 226; Lawson on Contracts, 283.

The burden of proof in usury is on him who asserts it, and must be established, not only by the fullest proof, but as it is a penalty in the nature of a crime, it is to be established beyond a reasonable doubt. 7 Wait's Actions and Defenses, 637, and cases there cited.

The law of this state, in existence in 1879, is the law of the contract governing the case, and if usury is a penalty, only the penalty provided in 1879 can be inflicted. The law then in force fixed the penalty as a forfeiture only of the excess of ten per centum interest for usury. The contract as then made was a legal contract, entitling the defendant by law to ten per centum. Acts 1875, p. 214, reviving code of 1871, § 2279. And our new usury statute is code of 1880 and code of 1892. Both expressly state that they shall not be retroactive. All rights, remedies, etc., preserved. Secs. 4 and 5 of each of them.

There is yet another principle of law that would sustain the decree for ten per centum in this case. It is this: If the renewal notes since 1880 cannot be enforced for ten per centum, the old one given in 1879, on which they are based, will be revived, that was legally enforceable for ten per centum. When recovery cannot be had on a renewal note because it is usurious, recovery may be, nevertheless, on the former note, not usurious, for which it was given. 7 Wait. A. & D., 614. And the supreme court of the United States has held "if a security founded on a prior one is tainted, the prior one will be revived." *Bernehisel* v. *Firman*, 22 Wall., 170; *Newell* v. *Nixon*, 18 Coop., 305.

Argued orally by *Edward Mayes*, for appellant, and by *B. T. Kimbrough*, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The payment of the $140, November 29, 1878, was sworn by one witness to have been a cash payment, and this the chancellor manifestly accepted as true, finding that the note was usurious. The argument that it was not a cash payment, but was intended as a purgation of the usury, is without the slightest support in the evidence. If it had been a purgation, then the amount of the credit would have been only an amount equal to the amount of the usurious interest in excess of ten per centum. But it was much more, and this circumstance—perfectly manifest from a mere calculation—furnishes the corroborating circumstance to the testimony of said one witness needed to meet the rule that since the answer was sworn to and the bill was only sworn to by counsel, there must be more than the testimony of one witness to overturn the answer, if that rule applied here. But it is clear that the answer was sworn to by one who had no personal knowledge of the facts set forth in the answer, and such an answer is not within the protection of the rule. 1 Am. & Eng. Enc. Pl. & Pr., p. 943, par. 7, and pp. 944–946. Both on the evidence and on the pleading this contention must, therefore, fail. It is plain that the transaction has been usurious from the beginning. The rate of interest was at first eighteen per centum. This is demonstrable by a mere calculation. The bill is not one for an injunction only, but also for an accounting. And it is obvious that whether the decree should be reversed or affirmed on the merits as to the accounting, is not to be determined by whether the bill was properly sworn to as a bill for an injunction. The statute (§ 557) does not say that a bill for an injunction shall be sworn to in all cases. It requires the conscience of the chancellor to be satisfied "by oath or other means." There may be cases where an injunction should be "granted" on an unsworn bill, if the "other means" are convincing, as, for example, written admissions of the party against whom it is sought, or documentary evidence such as these notes, showing

for themselves the "equity and truth of the allegations in the bill." This is an exact statement of the rule. 10 Am. & Eng. Enc. Pl. & Pr., 965 (*b*), note 2, and authorities.

The New Jersey case cited construes the phrase, "other means," precisely as we do, which case (*Morris Canal Co.* v. *Bartlett*, 3 N. J. Eq., 9) see specially. The text says: "What is required as preliminary to the granting of an injunction, other than the sufficiency of the averments of the bill, is that the confidence of the court should be obtained, and it is not in all cases indispensable that the bill should be verified. Although the bill is not verified, an injunction will be allowed where documentary evidence or records are produced which satisfy the conscience of the court."

At all events, the chancellor who had the case before him, not on a mere motion to dissolve, but on the merits on full proof, did right not to dissolve the injunction and dismiss the bill seeking, not an injunction only, but an accounting as well.

So far as tender is concerned, complainant did offer to pay, and actually tendered in cash, the amount he admits to be due; but this was declined. On the facts of this case, with the uncertainty as to what was legally due, no other tender was necessary, the complainant renewing in his bill the offer to pay whatever was legally due. Courts do not require impossibilities. In cases where it cannot be known with reasonable certainty what is due till an accounting shall have been had to determine that very thing, it is certainly enough if the complainant shall actually tender what he admits in good faith to be due, offering moreover to pay whatever shall be ascertained to be legally due. This is the doctrine of *Aust* v. *Rosenbaum*, 74 Miss., 893. So, also, is *Toulme* v. *Clark*, 64 Miss., 471. See, also, *Bank* v. *Bank*, 63 Miss., 231. It is, also, the now generally accepted doctrine. 10 Am. & Eng. Enc. Pl. & Pr., 935, 936, par. 1 and 3.

Up to the execution of the note of 1885 the provisions of the code of 1871 governed as to the penalty. The note of 1885 is

a new contract.   It starts with a new principal, extends the time of payment, and adds, for the first time, the clause as to attorney's fee—a distinctly new term.   The rule is well settled that such a note executed after the repeal of a former law, the repealing statute changing the usury penalty, is a new contract, governed by the law in force at the time the note is executed. The 27 Am. & Eng. Enc. L. (1st ed.), 937, states the rule thus: "A new enactment may properly govern a subsequent agreement for the extension of time upon the original note, that being in effect a new contract."

*Story* v. *Kimbrough*, 33 Ga., 21, is directly in point on the facts of this case.   The court says: " But for the act of 1856, referred to in the charge of the court the charge would have been correct.   By the act of 1856, only the usurious interest on contracts made after the date of that act, March 3, 1856, is void.   Under it the principal and legal interest on contracts made after that date may be recovered.   This act did not apply to the original contract, because it was made prior to the passage of the act, and the interest, up to the making of the new contract, on February 29, 1857, both of legal and usurious, was void, and could not be recovered; but the last contract of the latter, for another year's forbearance or extension of the time of payment, was a new contract, made while the law of 1856 was in force, and must be governed by that act.   It was said that it could not be a new contract, because the note was not changed—no new note was given. That is true; but it was, nevertheless, a new contract, as much binding on the plaintiff (Story) as the first one, and of the same benefit to the defendant as the first.   Under the first he got the benefit of the use of $6,000 for one year, and under the second he was allowed to continue its use for the same time, and but for the last, the plaintiff would have got his money at that time to which he was entitled.   That they allowed the old securities for the debt to remain unchanged, did not make it the less a contract binding on both parties, according to the

law as it stood at that date.    The plaintiff was, therefore, en-
titled to the legal rate of interest upon the amount then due,
from the date of this last contract up to the time of the pay-
ment, with interest on the balance until the whole is paid, the
defendant being entitled to the benefit of the payments made
of usurious interest, and also of legal interest from the first to
the second contract, as payments on the amount thus found to
be due.''

The case at bar is a stronger one in this respect than the
Georgia case—stronger, that is, to show a new contract.    To
the same effect, see *Webb* v. *Bishop*, 101 N. C., 99, and *Watson*
v. *Mims*, 56 Texas, 451, cited in note 5 of the above citation
from the Am. & Eng. Enc. of Law.    Again, at page 938, Am.
& Eng. Enc. of Law says: ''The statute changing the penalty
applies to suits thereafter brought, though based upon contracts
made before such enactment.''    And again, at page 939: ''The
law in force at the time of suit governs as to the recoupment of
usurious interest paid.''

This last position is abundantly supported by authorities and
is manifestly sound on principle.    See *Sager* v. *Schnewind*, 83
Ind., 204; *Perrin* v. *Lyman*, 32 Ind., 16; *Burroughs* v. *Cook*,
17 Iowa, 440.    Mr. Webb, in his recent work on usury (1899),
says, in section 237: ''Where a contract for the payment of
money has been renewed, by either implication or express
agreement, in such a manner that the renewal has all the es-
ential elements of a contract, the renewal contract is governeds
by the law in force at the time it is made, although that law
may be different from the statute in force at the time the orig-
inal contract was made.''    Again, he says, in section 243: ''A
penalty, being merely a punishment for the taking of usury,
does not affect the validity of the contract, and is subject to
legislative control to the extent that it may be imposed or
removed at any time by statute.''

As to the proposition that a statute changing the penalty
governing on suits thereafter brought, though based upon con-

tracts made before such enactment, the citations from Indiana and North Carolina do not entirely support the text, and we are not to be understood as assenting to that proposition in all of its generality.   We hold—dealing with our own statutes— that the provisions of the code of 1880 are prospective and have no retroactive efficacy, so that, up to the execution of the note of 1885, the provisions of the code of 1871 governed; but the note executed in 1885 being, under the authorities and on principle, a new contract, that note and all subsequent notes are to be governed by the code of 1880.   As to the proposition that it is a new contract, and so to be governed by the law in force when the contract was made, Mississippi decisions are in perfect harmony with those already cited.   *Rozelle* v. *Dickerson*, 63 Miss., 538; *Warmack* v. *Boyd*, 63 Miss., 488; *Norcum* v. *Lum*, 33 Miss., 299.

It is not necessary to consider whether a statute making a rate of interest usurious which was lawful when a preceding contract was made, impairs the obligation of the contract, for in this case there never was an hour when this contract was not grossly usurious.   In fact, the first note made charged the highest usury of any of the notes.

As to the rule in this state, where a sale under a trust deed or mortgage is enjoined, under the code of 1880 or the code of 1892, we are satisfied that the true rule is that only the principal can be recovered when the contract is usurious.   That has been the unbroken holding of this court.   See *Parchman* v. *McKinney*, 12 Smed. & M., 631; *Norcum* v. *Lum*, 33 Miss., 299; *McAllister* v. *Jerman*, 32 Miss., 142; *Chaffe* v. *Wilson*, 59 Miss., 42; *Long* v. *McGregor*, 65 Miss., 70; *Dickinson* v. *Thomas*, 67 Miss., 777; *Mortgage Co.* v. *Jefferson*, 69 Miss., 770; *Rozelle* v. *Dickerson*, 63 Miss., 538; *Warmack* v. *Boyd*, 63 Miss., 488.

The case of *So. B. & L. As.* v. *Toney*, decided last Monday, announces the correct view, *ante p.* 916.

The case of *Mortgage Company* v. *Jefferson*, 69 Miss., 770,

has been greatly misunderstood. It does not conflict with *Parchman* v. *McKinney*, but approves it. The contract there was not made in this state, nor payable in this state. Legal interest was required to be paid there on the sole ground that the contract was not governed by the law of Mississippi. It was directly held that if the contract had been governed by the law of Mississippi all interest would have been forfeited. Citing *Norcum* v. *Lum*, *Hooker* v. *Austin*, and *Long* v. *McGregor*, the court said, page 787: "We cannot perceive any public policy of this state which is to be conserved by applying the rule prescribed by our statute of forfeiting all interest to a contract made in another state. This is not a suit upon the contract, and its terms and conditions furnish no standards by which the court is to be guided." In other words, whatever the language of the opinion, all that was decided in the *Mortgage Co.* v. *Jefferson* was that, since the contract was not a Mississippi contract, it was not to be governed by Mississippi law, but by the general equity doctrine, which is that the principal and legal interest can be collected. With us the doctrine is firmly established that the debtor may pay the whole interest and then sue at law and recover back the part forfeited by the statute—now all. To hold under our statute (§ 2348, code of 1892) and system of jurisprudence that the debtor, who may recover the usury at law, cannot in equity, secure relief without paying what he can recover back at law, though voluntarily paid, is utterly illogical and a view wholly unsound.

It is manifest from what has been said that the court below erred in applying the provisions of the code of 1871 after the execution of the note of 1885.

*The decree on the cross appeal is affirmed, on direct appeal is reversed, and cause remanded to be proceeded with in accordance with this opinion.*