O. B. CRITTENDEN ET AL. *v.* SAMUEL C. RAGAN ET AL.

[42 South. Rep., 282.]

1. PLEADINGS. *Usury.*

An averment that defendant discounted the note of his customer given for advances, placing the amount of the note, less the discount, to his credit, and in addition charged him ten per centum interest per annum—the maximum legal rate—on the cost price of the advances; sufficiently pleads usury.

2. CHANCERY PRACTICE. *Equitable relief. Tender.*

A bill in equity by a second mortgagee to vacate a sale made under a first mortgage, praying an accounting of the sum due 'on the first mortgage and a resale of the property without making any tender at all, although admitting some debt to be due to the first mortgagee, is not saved from a demurrer by a charge of unsuccessful demands on the first mortgagee for an itemized account of what was due him.

FROM the chancery-court of Washington county.

HON. PERCY BELL, Chancellor.

Ragan and others, appellees, were complainants in the court below; O. B. Crittenden & Co., appellants, and the Geiss-Mann Hardware Company, an appellee, were defendants there. From a decree overruling the demurrer of defendants, O. B. Crittenden & Co., to the bill of complaint, and to the cross-bill of defendant hardware company, O. B. Crittenden & Co. appealed to the supreme court.

The appellee, Ragan, sued the appellants, Crittenden and others, composing the copartnership of O. B. Crittenden & Company, and the appellee, Geiss-Mann Hardware Company. The Geiss-Mann Hardware Company adopted Ragan's bill as its cross-bill against appellants. Appellants, Crittenden & Company, were senior mortgage creditors of one Fuller, having furnished him money and plantation supplies during 1903, 1904, and 1905, securing the indebtedness by trust deeds, executed annually upon his land, live stock and other personalty, his

latest trust deed to them being executed in January, 1905. Appellee, Ragan, was a junior mortgagee in two trust deeds from Fuller upon the same property. Of the trust deeds in Ragan's favor one was subsequent to a small trust deed Fuller had executed on the land in favor of the Geiss-Mann Hardware Company. In 1906 the trust deed to appellants, executed in January, 1905, was foreclosed, and the property bought in by appellants for a sum insufficient to satisfy their indebtedness.

The bill charged that the property was sold for much less than its real value, and was sacrificed; that complainant, both before and at the sale, had repeatedly, but without avail, requested appellants to render to him an itemized statement of the sum due to them by Fuller, in order that he might pay off the debt for his own protection in case the same were free of usury and satisfactory to Fuller; that as shown on the face of the trust deed, appellants had taken a note from Fuller, bearing ten per centum interest per annum on its face from its date until paid, for advances to be made to Fuller, had at once discounted the note, placing only the proceeds to Fuller's credit, and afterwards, when the advances were made, had again charged ten per centum interest per annum on such advances, thus making double charge of interest on the amount actually advanced to Fuller, constituting usury.

It was alleged that Fuller was insolvent. Complainant prayed for an accounting and purging of the indebtedness of Fuller to appellants; for the sale to be set aside, and resale decreed, and for the proceeds to be equitably applied.

Appellants demurred to the bill and to the cross-bill because of a failure to tender any amount, or to aver a willingness to pay appellants any sum which, on accounting, might appear due them by Fuller.

*Percy & Campbell,* for appellants.

Appellants' demurrers should have been sustained, because the bill and cross-bill of appellees failed to show any damage to

appellees, or improper foreclosure, or fraud.    Moreover, the bills show no offer upon the part of appellees to do equity, there being no offer to pay any amount whatever, although it is admitted that some sum is due to appellants.

Appellees assert that the sale should be set aside because of usury charged under the trust-deed, and because appellants failed both before and at time of sale to furnish appellee, Ragan, and other prospective bidders, with an itemized account of Fuller's indebtedness to appellants; and because personal property sold under the trust deed was not present at the place of sale.

The claim of usury is made, chiefly because the stipulations in the trust deed show that the note secured thereby was for advances to be made, as well as for past-due indebtedness, and appellants discounted the note, which on its face calls for ten per centum per annum interest from date until paid, and, crediting the proceeds to Fuller, afterwards, when the advances were made, again charged ten per centum per annum interest on such advances.    But perusal of the trust deed will show that its intent is for a per centum charge only on money advanced over and above the sum mentioned as face of the note, a proper provision.

As regards appellants' alleged failure to furnish an itemized account to appellees of Fuller's indebtedness to appellants upon Ragan's demands, appellants were under no obligations to do this.    Fuller, the debtor, of course had such right.    But it would certainly be an inconvenient rule to require a party selling under a trust deed for a debt arising out of dealings covering several years to furnish an itemized statement to every one desiring to bid at the sale, or even to a junior mortgagee.    It is not alleged that there was any concealment of the matter, or refusal to allow inspection of Fuller's account upon appellants' books, or even any request for such inspection.    There must be some allegation of fraud or wrong aided by failure to furnish such account.    Appellees were clearly advised as to the approximate amount of appellants' demands.    Fuller's debt to appellants was stated at

the sale to be a sum certain, on which were to be credited the proceeds of a few bales of unsold cotton.    If appellees considered the debt to be fraudulent or usurious, they had a right to injunction proceedings against appellants.    If unwilling to take risk of damages on injunction bond, they might have bid the fair value of the property advertised, and then have demanded in court an accounting from appellants.    Who seeks equity must do equity.    But appellees say, further, that they were entitled to account demanded to see if the same were valid, so that Fuller subsequently might not attack any title under foreclosure proceedings on the ground of invalid debt.    How, we say in reply, could appellants assure any bidder that the title would be good in any event, as only such title as was in the foreclosing trustee could pass to the purchaser at the sale?    This was a risk any purchaser at the sale had to assume.    It is only against infringement of legal rights that appellees can complain.    The case of *Aust* v. *Rosenbaum,* 74 Miss., 893, relied upon by appellees, is not analogous to this case; for there the debtor, and not a junior mortgagee, sought to redeem and to enjoin a sale for a debt confessedly usurious and fraudulent, offering to pay any debt to be found due on an accounting, and alleging that the land embraced in the mortgage was worth greatly more than the amount due. Here, however, appellees have never made offer to pay appellants anything at all; nor is it asserted that the property in the trust deed was worth more than appellants' demand.    Even though appellants refused to make any statement to appellees of amount due to them under the trust deed, this could not relieve appellees from necessity of offering to pay whatever might be due.    The effect of decision in *Aust* v. *Rosenbaum, supra,* was only to relieve from actual tender where tender was actually impossible. The court did not say that the debtor, even, could remain in court without offer to do equity.    Appellees, admitting that something was due to appellants by the debtor, should at least have offered to pay whatever should be ascertained to be legally due to appel-

lants under the trust deed.   *Purvis* v. *Woodward,* 78 Miss., 929 (29 South. Rep., 917) ; 20 Ency. Pl. & Pr., pp. 935, 936.

*Wynn & Wasson,* for appellees.

The bills, in conjunction with the trust deed, showed that Fuller's note to appellants for future advances bore on its face ten per centum interest per annum from date, and was to be discounted and the proceeds passed to Fuller's credit on open account, and that afterwards, when advances were made, ten per centum interest per annum was charged on such advances.   It is contended by appellants, however, under their demurrers, that, granting the facts to be as above alleged, equity will not grant appellees relief, because appellees' bill and cross-bill do not tender to appellant such amount as may be due under the trust deed.   Our reply is, that no amount could be tendered, because appellees have never been able to secure itemized account from appellants, and the bill and cross-bill show that up to the time of the sale, appellants themselves were unable to state exactly what was owing to them.   How, then, could tender be made ?   In *Aust* v. *Rosenbaum,* 74 Miss., 893, it is stated that tender of only a part of what may on accounting be found due would be no tender ; and where accounts have not been shown to the party complaining and it is impossible to know amount due, the complainant need make no tender, as the requisite sum is unknown. But appellants say, as additional ground of demurrer, that appellees did not offer to pay to appellants such sum as might be due on accounting.   But in *Aust* v. *Rosenbaum, supra,* it was distinctly stated, that an offer in a complaint is, at most, a technical matter, serving no substantial purpose, because in the judgment given in such action the court always holds that redemption may be had upon payment of amount found due ; the tender and offer being important only as they may have bearing upon the question of costs.   See, also, 28 Am. & Eng. Ency. Law (2d ed.), 842.   Certainly the appellees, as junior mortgagees, having interest in the property to be sold under the trust deed in favor

. of appellants, were possessed of the right to pay off the prior incumbrance.   *Boyd* v. *Warmack,* 62 Miss., 539; and they were entitled to an accounting from appellants in order to know what amount to tender.

But appellants say further that the bills do not distinctly assert that the note of Fuller to appellants was actually discounted. Our reply is, that to discover the facts as to the above, is the very reason why itemized statement of account was demanded; because the trust deed on its face stipulated for these usurious charges and the chief purpose of the bills was for discovery. Appellees, in case the debt were usurious, could not be expected to purchase in the property, because the title would not have been good.   Where a mortgagee becomes purchaser of property at foreclosure sale, his title may be impeached for usury.   1 Jones on Mortgages, sec. 646.   They had the right to see the items making up the debt charged against Fuller, and were not bound to enjoin to protect their rights, if the debt to appellants was usurious.

The bills asked for resale of the property to be fairly made, after adjustment of the real amount due to all parties in interest, with proper application of the proceeds of sale.

WHITFIELD, C. J., delivered the opinion of the court.

We think the bill sufficiently avers usury as to the discount of the notes, and the double charges therefor on the amount advanced Fuller.   The trust deed recitals, taken in conjunction with the averments of the bill, show that Crittenden discounted the notes, which were for advances to be made, and placed the amount to the credit of Fuller, and that afterwards, when the advances were made, again charged ten per cent per annum on such advances; and the demurrer admits all this to be true.   The other charges about usury and fraud are not sufficiently specific. The appellees' bill also clearly admits some sum to be due the appellants, and no tender is made of any amount whatever.   It is true that the bill and cross-bill aver that repeated demands

had been made upon the appellants for an itemized account for what was due appellants, but that none had ever been furnished. On this state of case, something being due—and some considerable sum—and nothing being tendered, the bill did not offer to do equity in this regard, within the meaning of the settled rule announced in *Purvis* v. *Woodward,* 78 Miss., 929 (29 South. Rep., 917), where we said: "In cases where it cannot be known with reasonable certainty what is due till an accounting shall have been had to determine that very thing, it is certainly enough if the complainant shall actually tender what he admits in good faith to be due, offering, moreover, to pay whatever shall be ascertained to be legally due." This is now the settled rule on this subject here and elsewhere. Appellees should, therefore, have tendered some safe sum in good faith to cover the amount they honestly believed to be due, and have offered, with their bill, to pay whatever should be ultimately ascertained to be legally due. The bill fails to satisfy this rule.

The decree is reversed, but the case is remanded, with directions to the court below to allow the bill to be amended and the cross-bill of the Geiss-Mann Hardware Company also to be amended, so as to meet this rule, and so as, further, to more specifically and particularly set out the facts constituting the fraud and the other usury, beside the usury properly charged in the bill. Decreed accordingly.

*Reversed and remanded.*